

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2006

# USA v. Tykarsky

Precedential or Non-Precedential: Precedential

Docket No. 04-4092

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Tykarsky" (2006). *2006 Decisions.* Paper 1004.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1004

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4092

———

UNITED STATES OF AMERICA

v.

TODD TYKARSKY
a/k/a Toddyty63
a/k/a Golpher12345

TODD TYKARSKY,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00400)
District Judge: Honorable Harvey Bartle, III

———

Argued April 3, 2006

Before: RENDELL, SMITH and ALDISERT, Circuit Judges

(Filed: May 10, 2006)

Theodore Simon, Esq. (ARGUED)
1600 Market Street, 5th Floor
Philadelphia, Pennsylvania 19103

    *Counsel for Appellant*

Anne W. Chain, Esq. (ARGUED)
Patrick Meehan, Esq.
Robert Zauzmer, Esq.
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

    *Counsel for Appellee*

---

## OPINION

---

ALDISERT, <u>Circuit Judge</u>.

In this appeal from a conviction and sentence in the United States District Court for the Eastern District of Pennsylvania, we join several sister courts of appeals in holding that the involvement of an actual minor, as distinguished from a government decoy, is not a prerequisite to conviction under 18 U.S.C. § 2422(b) (actual or attempted persuasion of a minor to engage in illicit sexual activity) or 18 U.S.C. § 2423(b) (traveling for the purpose of engaging in illicit sexual activity).

We also reject the myriad other attacks Defendant Todd Tykarsky makes on his conviction, which include, without limitation, Commerce Clause and First, Fifth and Eighth Amendment challenges to the statutes under which he was convicted, a Sixth Amendment Grand Jury Clause challenge to the indictment, violations of his Sixth Amendment Confrontation Clause rights, challenges to the sufficiency of the evidence, *Brady* violations and numerous instructional errors.

Having searched through this proverbial "haystack" of claims, we do, however, agree with Tykarsky's ex post facto challenge to his sentence. Absent a special jury finding that Tykarsky violated § 2422(b) after April 30, 2003, the date on which the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (PROTECT Act), Pub. L. No. 108-21, 117 Stat. 650 (2003), became effective, the District Court erred in imposing the mandatory minimum sentence prescribed by the Act. Accordingly, we will affirm the conviction and remand for resentencing.

## I. Facts and Procedural History

### A.

Tykarsky is a resident of Trenton, New Jersey. On April 22, 2003, he entered an America Online ("AOL") chat room entitled "Iloveoldermen2," using the screen name "toddty63." In the same chat room was Special Agent Nester, an undercover FBI agent posing as a 14-year-old girl using the screen name "HeatherJet14." Tykarsky initiated a dialogue over AOL's Instant Messenger with "HeatherJet14," and during the course

of these communications he expressed a desire to engage in sexual activity with her.

On at least eight different dates from April 24, 2003 to May 20, 2003, Tykarsky communicated with "HeatherJet14" via either Instant Messenger or email. In these communications, he used the screen names "toddty63" and "golpher12345" and described, in explicit detail, the sexual acts that he hoped to perform with her.

On May 8, 2003 and May 9, 2003, Tykarsky sent instant messages to "HeatherJet14" requesting that she provide him with a picture of herself. Special Agent Nester sent him a photograph of herself that was taken when she was approximately 14 or 15 years old. On May 15, 2003, Tykarsky wrote that he was "a little scared" because "HeatherJet14" was so young. He also commented that he could get into trouble and go to jail if they were discovered. The two parties discussed the possibility of meeting on May 20, 2003 at the Holiday Inn on Packer Avenue in Philadelphia. Tykarsky noted that he would wear jeans and a white shirt and drive a blue Ford Explorer.

On or about May 19, 2003, Tykarsky again communicated by Instant Messenger with "HeatherJet14." They made tentative arrangements, subject to confirmation, to meet on May 21, 2003 at the Holiday Inn. Tykarsky again stated that he would wear jeans to the rendezvous. On May 20, 2003, via Instant Messenger, Tykarsky again described, in explicit detail, the sexual acts in which he planned to engage with the putative minor. The two parties agreed to meet at 9:00 a.m. on May 21, 2003.

On the morning of May 21, 2003, Tykarsky, wearing a white shirt and jeans, drove his car, a blue 2002 Ford Explorer with a New Jersey license plate, to the designated Holiday Inn on Packer Avenue in Philadelphia. He arrived at approximately 9:15 a.m., parked and locked the car, and entered the motel. Once inside, he was arrested and then searched by FBI agents.

After being arrested, Tykarsky was taken to an FBI office where he was advised of his rights. He consented to an interview, which began around 10:00 a.m. Special Agent DeFazio, the case agent, documented the interview, but she did not write down verbatim statements and the interview was not recorded. During the interview, Tykarsky made various incriminating statements. He said that he had met "HeatherJet14" online, that he believed that she was 14 and that he thought about having sex with her. He claimed that this was the first time that he actually traveled to do something like this, that he thought that it was a mistake and that he should turn around, but that he never did. The interview ended around 11:02 a.m., at which time Tykarsky called his employer and was turned over to the United States Marshal's Office.

Pursuant to both his consent and a search warrant, the FBI conducted a search of Tykarsky's home. His computer was seized and analyzed by the Computer Analysis Response Team ("CART") of the FBI. CART confirmed that the computer had AOL software and "buddy lists" associated with both screen names "toddty63" and "golpher12345," and that one of the buddy lists included the screen name "HeatherJet14." CART also recovered from Tykarsky's hard drive a copy of the photograph that Special Agent Nester had sent to him.

Tykarsky was charged by indictment with interstate travel to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b) (Count One),[1] and using an interstate facility to attempt to persuade a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b)

---

[1] Count One of the indictment charged as follows:

> On or about May 21, 2003, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant
>
> TODD TYKARSKY
> a/k/a "toddty63,"
> a/k/a "golpher12345,"
>
> traveled from New Jersey to Philadelphia, Pennsylvania for the purpose of engaging in, and attempting to engage in, illicit sexual conduct, as defined in Title 18, United States Code, Section 2243(f), that is, a sexual act as defined in Title 18, United States Code, Section 2246(2), with a person under eighteen years of age.
>
> In violation of Title 18, United States Code, Section 2423(b) and (e).

(Tykarsky Br., Ex. H.)

(Count Two).[2]  At trial, the Government relied upon the nine instant messages and emails, Tykarsky's post-arrest statement, the evidence seized from the computer and the testimony of Special Agent Nester ("HeatherJet14") and Special Agent DeFazio.  Tykarsky did not testify in his defense.  He was

---

[2] Count Two of the indictment charged as follows:

> Between on or about April 22, 2003 and on or about May 20, 2003, at Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant
>
> TODD TYKARSKY
> a/k/a "toddty63,"
> a/k/a "golpher12345,"
>
> used a facility in interstate commerce, that is, a computer modem connected to the Internet to attempt to knowingly persuade, induce, entice and coerce a person under eighteen years of age to engage in sexual activity for which the defendant could be charged with a criminal offense, that is, statutory rape, in violation of New Jersey Statutes 2C:14-2 and Title 18, Pennsylvania Consolidated Statutes Annotated, Section 3122.1.
>
> In violation of Title 18, United States Code, Section 2422(b).

(Tykarsky Br., Ex. H.)

convicted on both counts and sentenced to five years in prison pursuant to the post-PROTECT Act version of 18 U.S.C. § 2422(b), which mandates a minimum sentence of five years. Under the pre-PROTECT Act version of 2422(b), there was no minimum sentence, providing only that a violator "shall be fined under this title, imprisoned not more than 15 years, or both."  18 U.S.C. § 2422(b) (2002).

**B.**

Tykarsky filed four motions in the District Court relevant to his appeal.  First, before trial, Tykarsky moved to dismiss the indictment.  He argued, among other things, that the indictment was legally insufficient and that Count One of the indictment was duplicitous because it charged both an attempt and a completed offense.  He also raised an impossibility defense to both counts on the grounds that no minor was actually involved in the indicted offenses.  The District Court rejected his impossibility defense and denied the motion, holding that "[a]n actual victim is not required for a prosecution of attempt under § 2422 or for travel with the requisite intent under § 2423." The Court found Tykarsky's other arguments "unconvincing" and declined to address them.

Second, Tykarsky moved to suppress statements he made to FBI officers after his arrest.  The Court denied his motion because it concluded that Tykarsky knowingly and voluntarily waived his *Miranda* rights before speaking to the FBI.  *See United States v. Tykarsky*, No. Crim. A. 03-400, 2004 U.S. Dist. LEXIS 2567, at *5-9 (E.D. Pa. Jan. 26, 2004).

Third, after the verdict Tykarsky moved for a judgment of acquittal and a new trial, pursuant to Rules 29, 33 and 34 of the Federal Rules of Criminal Procedure. He challenged the sufficiency of the evidence to support his convictions; the District Court's restriction of cross-examination at various points during the trial; "arguably misleading, inaccurate and prejudicial testimony" presented by the Government; references that the prosecutor made to the defense counsel's use of Government Exhibit 20 during the prosecution's rebuttal; various jury instructions; the sufficiency of the indictment; the constitutionality of the statutes under which he was convicted (asserting violations of the Commerce Clause, the Fifth Amendment right to interstate travel and various other provisions of the Bill of Rights); and "other arguable inaccuracies and/or errors" that occurred during the trial.

The District Court denied the motion. *United States v. Tykarsky*, No. Crim. A. 03-400, 2004 U.S. Dist. LEXIS 15392 (E.D. Pa. Jul. 20, 2004). The Court concluded that the Government had presented sufficient circumstantial evidence from which the jury could infer that Tykarsky traveled across state lines for the purpose of engaging in criminal sexual activity on May 21, 2004. *Id.* at *4-5. It then reiterated its earlier conclusion that neither § 2422(b) nor § 2423(b) require the involvement of an actual minor. *Id.* at *6. The Court also found that the Government was not required to prove that the communications between the undercover FBI agent and Tykarsky actually crossed state lines because the use of a computer connected to the Internet constitutes the use of a "'facility or means of interstate commerce,' even though the communications in question may have actually been intrastate

9

in character." *Id.* at *7 (citations omitted). It declined to address Tykarsky's remaining arguments for post-trial relief, finding them to be "completely without merit." *Id.*

Fourth, after the denial of his post-trial motions but before sentencing, Tykarsky moved for discovery of additional exculpatory evidence. He argued that the Government manipulated the charge and the prosecution to "entrap" him so that he would be subject to the five-year mandatory minimum sentence that became effective on April 30, 2003. He sought evidence from the Government regarding the dates and times that the undercover agent was online to rebut her testimony that she did not see Tykarsky online between April 25 and May 8, 2003. Tykarsky also sought discovery of phone records that he alleges would call into question the Government's timeline of Tykarsky's post-arrest interview and processing.

In the same motion, Tykarsky asked the Court to "intervene to assure that a just sentence is imposed" because the prosecution had declined to file a downward departure motion based on his alleged "cooperation." He explained that although he had not provided the Government with any information or cooperated in any way with respect to the charged offenses, he had "sought to cooperate with the government by providing information as to other matters," even going so far as to hire a private investigator to uncover other illegal activity (in which Tykarsky was not involved) that Tykarsky had later reported to the Government.

The District Court denied Tykarsky's motion for additional discovery as a "fishing expedition." It also found that

10

there was "no basis in the record to support the [sentencing] entrapment defense," and that there was no evidence that the Government had improperly declined to file a downward departure motion on his behalf.

This appeal followed. We have jurisdiction to review Tykarsky's conviction under 28 U.S.C. § 1291 and his sentence under 18 U.S.C. § 3742.

## II. "Actual Minor" and §§ 2422(b) & 2423(b)

Tykarsky's first contention is that the evidence was insufficient to support his conviction on either count because it showed only that he had communicated and traveled to engage in sexual activity with an adult undercover agent. Raising the defense of legal impossibility, he contends that both § 2422(b) and § 2423(b) require the involvement of an actual minor. The District Court, relying on cases from the Fifth, Ninth and Eleventh Circuit Courts of Appeals, rejected this contention and held that "an actual victim is not required for a prosecution of attempt under § 2422 or for travel with the requisite intent under § 2423." This case presents the first opportunity for us to address whether the attempt provision of § 2422(b) and the travel provision of § 2423(b) require the involvement of an "actual minor." We will discuss each in turn.

## A.

Section 2422(b) of Title 18 reads:

Whoever, using the mail or any facility or means

11

of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so*, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2422(b) (2002) (emphasis added).

As we observed in *United States v. Hsu,* "[t]he law of impossible attempts has received much scholarly attention, but remains a murky area of the law." 155 F.3d 189, 199 (3d Cir. 1998). The common law distinguishes between legal and factual impossibilities, providing that the former is a defense an that the latter is not. Factual impossibility "'is said to occur when extraneous circumstances unknown to the actor or beyond his control prevent consummation of the intended crime.'" *Id.* (quoting *United States v. Berrigan*, 482 F.2d 171, 188 (3d Cir. 1973)). By contrast, "'[l]egal impossibility is said to occur where the intended acts, even if completed, would not amount to a crime.'" *Id.* (quoting *Berrigan*, 482 F.2d at 188). Legal impossibility has been held to apply when a person accepts goods mistakenly believed to be stolen, *see People v. Jaffe*, 78 N.E. 169 (N.Y. 1906), when a hunter shoots a stuffed deer believing it to be alive, *see State v. Guffey*, 262 S.W.2d 152 (Mo. Ct. App.1953), and when a prisoner attempts to smuggle letters out of prison under the mistaken belief that the warden

has not consented, *see Berrigan*, 482 F.2d at 190.[3]  A classic example of factual impossibility is when a person fires a gun at a bed intending to kill another person, but the intended victim is not in the bed; the crime cannot be completed because of extraneous factors beyond the shooter's control.  *Hsu*, 155 F.3d at 199.

Here, Tykarsky contends that it was legally impossible for him to persuade a minor to engage in "sexual activity for which any person can be charged with a criminal offense" because "HeatherJet14" was an adult and, as a legal matter, any sexual activity between him and the undercover agent would not be criminal.  The Government contends that this is a case of factual impossibility because Tykarsky intended to engage in the conduct proscribed by law but failed only because of circumstances unknown to him.  As we have recognized, the difficulty in these types of cases "is that the distinction between factual and legal impossibility is essentially a matter of semantics, for every case of legal impossibility can reasonably be characterized as a factual impossibility."  *Id.*  For example, in the case involving the stuffed deer, had the facts been as the hunter believed, i.e. the deer was alive, the hunter would be guilty of shooting a deer out of season.  The elusiveness of this distinction and the belief that the impossibility defense exonerates defendants "in situations where attempt liability most

---

[3] These cases have been termed by many commentators as examples of "hybrid legal impossibility."  *See Hsu*, 155 F.3d at 199 n.16.  "Pure" legal impossibility, which is always a defense, occurs when the law does not even "proscribe the goal that the defendant sought to achieve."  *Id.*

13

certainly should be imposed," ALI Model Penal Code and Commentaries § 5.01, Comment at 308-309, has led many jurisdictions to eschew the distinction between legal and factual impossibility and abolish the defense altogether. *See Hsu*, 155 F.3d at 199 (collecting cases and observing that few jurisdictions still recognize impossibility as a defense); *United States v. Farner*, 251 F.3d 510, 512 (5th Cir. 2001) ("The distinction between factual and legal impossibility is elusive at best. Most federal courts have repudiated the distinction or have at least openly questioned its usefulness."); *see also* ALI Model Penal Code and Commentaries § 5.01, Comment at 578 ("The purpose of [the MPC's definition of attempt] is to eliminate legal impossibility as a defense to an attempt charge.").

Two of our sister courts of appeals have held that the absence of an actual minor in a § 2422(b) prosecution is a matter of factual impossibility. *See Farner*, 251 F.3d at 513; *United States v. Sims*, 428 F.3d 945, 959-960 (10th Cir. 2005). We, however, find it unnecessary to resolve this thorny semantical question here. Even assuming that this is a case of legal impossibility, it is well established in this Court that the availability of legal impossibility as a defense to a crime is a matter of legislative intent. *See Hsu*, 155 F.3d at 200 (examining legislative intent to determine whether Congress meant to permit a defense of impossibility to an "attempt" crime under the Economic Espionage Act); *United States v. Everett*, 700 F.2d 900, 904 (3d Cir. 1983) (reviewing the legislative history of the Drug Control Act and concluding that "Congress intended to eliminate the defense of impossibility when it enacted section 846"). Although when Congress uses a common law term such as "attempt" we generally presume that

14

it intended to adopt the term's widely-accepted common law meaning, including any common law defenses such as impossibility, "the courts will not impose that meaning if there are grounds for inferring an affirmative instruction from Congress to define it otherwise." *Hsu*, 155 F.3d at 200 (citations and internal quotations omitted). Indeed, regardless of whether we frame Tykarsky's challenge as relating to the defense of legal impossibility or to the Government's failure to establish the necessary elements of § 2422(b), our task is the same: to discern legislative intent.

After examining the text of the statute, its broad purpose and its legislative history, we conclude that Congress did not intend to allow the use of an adult decoy, rather than an actual minor, to be asserted as a defense to § 2422(b). First, the plain language of the statute, which includes an "attempt" provision, indicates that something less than the actual persuasion of a minor is necessary for conviction. *See United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004) (observing that the inclusion of the attempt provision "underscores Congress's effort to impose liability regardless of whether the defendant succeeded in the commission of his intended crime"); *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002) (observing that the attempt provision indicates that "[t]he fact that [the defendant's] crime had not ripened into a completed offense is no obstacle [to a conviction]"). Interpreting § 2422(b) to require the involvement of an actual minor would render the attempt provision largely meaningless because, as a practical matter, little exists to differentiate those acts constituting "enticement" and those constituting "attempted enticement." The attempt provision is therefore most naturally read to focus on the

subjective intent of the defendant, not the actual age of the victim. *See Meek*, 366 F.3d at 718 (holding that because the scienter requirement applies to both the act of persuasion and the age of the victim, attempt liability turns on the defendant's subjective belief). We therefore believe that the statute's plain language, though not conclusive, supports our holding.

Second, as in *Hsu* and *Everett*, the underlying purposes of the law provide substantial evidence of a congressional intent that the defense of legal impossibility should not apply. In both *Hsu* and *Everett*, we stressed that the statutes at issue were designed to offer "comprehensive" solutions to the conduct being regulated. *See Hsu*, 155 F.3d at 201; *Everett*, 700 F.2d at 906-907. From this we concluded "that Congress could not have intended to adopt the impossibility defense, 'whose viability at common law was questionable at best,' because doing so would only 'hamper federal efforts to enforce the drug [and corporate espionage] laws.'" *Hsu*, 155 F.3d at 201 (quoting *Everett*, 700 F.2d at 906-907).

Just as the Drug Control Act embraces a "comprehensive" solution for drug trafficking and the Economic Espionage Act provides a "comprehensive" solution for corporate espionage, the Child Protection and Sexual Predator Punishment Act of 1998 is described as "a comprehensive response to the horrifying menace of sex crimes against children, particularly assaults facilitated by computers." H.R. Rep. No. 105-557, at 10 (1998), U.S. Code Cong. & Admin.

16

News 678.[4]  It seeks to address the challenges of computer crimes "by providing law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children." *Id.*  The Committee also stated:

> It is the view of the Committee that law enforcement plays an important role in discovering child sex offenders on the Internet before they are able to victimize an actual child. Those who believe they are victimizing children, even if they come into contact with a law enforcement officer who poses as a child, should be punished just as if a real child were involved. It is for this reason that several provisions in this Act prohibit certain conduct involving minors and assumed minors.

---

[4] There is very little legislative history pertaining to the first version of § 2422(b), which was attached to the Telecommunications Act of 1996.  Because the Child Protection and Sexual Predator Punishment Act of 1998 rewrote § 2422(b) and made substantial changes to related laws, we find the Congressional findings related to that act to be more relevant here.  *See Meek*, 366 F.3d at 719 (discussing the history of the 1998 amendment in relation to § 2422(b)); *see also United States v. MacEwan*, 2006 WL 861184 at *9 n.12 (3d Cir. Apr. 5, 2006) ("This Court has held that we are able to examine congressional findings underlying other acts where the findings discuss a matter closely related to the issues underlying the presently analyzed law.").

17

H.R. Rep. No. 105-557, at 19.

Seeking to undermine this evidence of legislative intent, Tykarsky points to two unpublished decisions from the Western District of Missouri that determined that the legislative history indicates that the involvement of an actual minor is a prerequisite to conviction under § 2422(b). *See United States v. Helder*, No. 05-00125-01-CR-W-DW (W.D. Mo. Aug. 5, 2005) (unpublished), *United States v. Hicks,* No. 05-00042-01-CR-W-DW (W.D. Mo. Aug. 29, 2005) (unpublished). Both cases rely heavily upon an unadopted amendment to § 2422 that would have added a new subsection (c), making it a crime to "knowingly contact[ ] an individual, who has been represented to the person making the contact as not having attained the age of 18 years" for the purpose of engaging in sexual activity. *See Helder*, No. 05-00125-01-CR-W-DW at *2-3 (quoting H.R. 3494, § 101, 105th Cong., 2d Sess. (1998). By not adopting this amendment, the District Court for the Western District of Missouri reasoned, Congress specifically considered and rejected liability resulting from law enforcement agents posing as minors. *Id.*

We disagree. Although legislative history is often an undependable guide to legislative intent, "failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." *See United States v. Craft*, 535 U.S. 274, 287 (2002) (internal quotations omitted); *see also Meek*, 366 F.3d at 720 ("Sorting through the dustbin of discarded legislative proposals is a notoriously dubious proposition."). We should be especially wary where, as here, the failed legislative proposal differs in fundamental ways from

the enacted legislation. The failed legislative proposal cited by Tykarsky addresses "knowing contact," rather than knowing "persuasion," "inducement," "enticement" and "coercion," and was intended to supplement, not replace, § 2422(b). We therefore do not embrace the District Court for the Western District of Missouri's interpretation of the legislative history and conclude that it is not persuasive here.

Third, we deem significant that the statute here, like those at issue in *Hsu* and *Everett*, "was drafted at a time when 'the doctrine of impossibility had become mired in fine distinctions and had lost whatever acceptance at common law it may have possessed when the statute considered in *Berrigan* was first enacted in 1930.'" *Hsu*, 155 F.3d at 202 (quoting *Everett*, 700 F.2d at 905).[5] The first version of § 2422(b) was added to Title 18 in 1996, almost three decades after the Model Penal Code reporters first advocated the elimination of the impossibility defense and the National Commission on Reform of the Federal Criminal Laws had concluded that the abolition of legal impossibility was already "the overwhelming modern position." *See id.* (discussing the changing views on the impossibility defense). We therefore doubt that Congress intended to permit legal impossibility to be asserted as a defense to § 2422(b).

Finally, we are mindful "of the potential damage that the [defendant's] position could work on law enforcement under the statute." *Id.*; *see also Everett*, 700 F.2d at 907 n.16. We mention this not because of our own policy preferences, but because it is

_____

[5] For the record, the author of this opinion wrote *Berrigan* 33 years ago.

relevant to Congress's intent. It is common knowledge that law enforcement officials rely heavily on decoys and sting operations in enforcing solicitation and child predation crimes such as § 2422(b). We consider it unlikely that Congress intended to prohibit this method of enforcement. Indeed, if we were to adopt Tykarsky's reading of the statute, law enforcement officials would have to use actual minors in conducting sting operations. We do not believe Congress intended such a result.

In light of § 2422(b)'s text, legislative purpose and history, and the unlikeliness that Congress intended the now-disfavored doctrine of legal impossibility to apply, we hold that the lack of an actual minor is not a defense to a charge of attempted persuasion, inducement, enticement or coercion of a minor in violation of § 2422(b). We therefore join the Courts of Appeals for the Fifth, Ninth, Tenth and Eleventh Circuits in concluding that a conviction under the attempt provision of § 2422(b) does not require the involvement of an actual minor. *Meek*, 366 F.3d at 719; *Farner*, 251 F.3d at 512; *Root*, 296 F.3d at 1227; *Sims*, 428 F.3d at 959-960.

Applying our interpretation of § 2422(b) here, we also conclude that Tykarsky's conduct falls squarely within our definition of criminal attempt. A person is guilty of an attempt to commit a crime "'if, acting with the kind of culpability otherwise required for commission of the crime, he . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.'" *Hsu*, 155 F.3d at

202-203, 203 n.19 (quoting and adopting Model Penal Code § 5.01(1)(c) (1985)). Thus, an attempt conviction requires evidence that a defendant (1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believes them to be, constitutes a substantial step in the commission of the crime. *See id.* at 203.

The evidence in this case satisfies both elements. The instant messages and the statements that Tykarsky made to FBI agents upon his arrest establish Tykarsky's subjective intent, and his appearance at the Holiday Inn according to the plan established over the instant messages provides the requisite "measure of objective evidence" corroborating his intent. *See Everett*, 700 F.2d at 908 (holding that "some measure of objective evidence corroborating" the criminal intent is necessary for an attempt conviction). The instant messages also provide sufficient evidence that he took substantial steps towards "persuading, inducing, enticing or coercing" a minor to engage in sexual activity. Accordingly, we will affirm his conviction under § 2422(b).

**B.**

With respect to § 2423(b), our conclusion is the same, but our analysis is truncated because there is no need to go beyond the text of the statute. *Singh v. Ashcroft*, 383 F.3d 144, 150 (3d Cir. 2004) ("If the statutory meaning is clear, our inquiry is at an end."). Section 2423(b) provides:

> A person who travels in interstate commerce . . . for the purpose of engaging in any illicit sexual

21

conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

By its unambiguous terms, § 2423(b) criminalizes interstate travel for an illicit purpose. The actual age of the intended victim is not an element of the offense; criminal liability "turns simply on the purpose for which [the defendant] traveled." *Root*, 296 F.3d at 1231. Neither factual nor legal impossibility applies in these circumstances. *See Sims*, 428 F.3d at 929 ("[W]e see nothing impossible about traveling with a specific purpose, which the jury found beyond a reasonable doubt he did."). As the District Court concluded in denying Tykarsky's post-trial motion, there was ample evidence from which the jury could conclude that Tykarsky traveled from New Jersey to Pennsylvania for the purpose of engaging in illicit sexual activity with a minor. *Tykarsky,* 2004 U.S. Dist. LEXIS 15392, at *5. It "make[s] no difference that an actual minor was not involved." *Id.* at *6.

## III.  Commerce Clause

Next, Tykarsky contends that the statutes under which he was convicted exceed Congress's powers under the Commerce Clause. We disagree. The Commerce Clause gives Congress power to regulate three types of activity: (1) "the use of channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect

interstate commerce." *See United States v. Lopez*, 514 U.S. 549, 558-559 (1995).

Although Tykarsky's Commerce Clause challenge is not fully developed, the thrust of his argument appears to be that the statutes under which he was convicted exceed Congress's power as defined by the Supreme Court's decisions in *Morrison* and *Lopez*. S*ee generally id.*; *United States v. Morrison*, 529 U.S. 598 (2000). Both *Morrison* and *Lopez*, however, involved challenges to statutes enacted pursuant to the third category described in *Lopez* – Congress's authority to regulate activities that substantially affect interstate commerce. As we made clear in our recent decision in *United States v. MacEwan*, "we need not proceed to an analysis of *Lopez*'s third category when Congress clearly has the power to regulate such an activity under the first two." 2006 WL 861184 at *5; *see also United States v. Lankford*, 196 F.3d 563, 572 (5th Cir. 1999) (finding that because § 2261(a)(1) is a regulation of the use of channels of interstate commerce, the court "need not address whether domestic violence 'substantially affects' interstate commerce").

Here, both statutes under which Tykarsky was convicted fall squarely within Congress's power to regulate the first two categories of activities described in *Lopez*. Section 2423(b) criminalizes *interstate travel* with intent to engage in illicit sexual conduct with a minor. As such, it regulates the use of the channels of interstate commerce. *See United States v. Bredimus*, 352 F.3d 200, 205-206 (5th Cir. 2003) (holding that § 2423(b) is a valid exercise of Congress's power to regulate the channels of interstate commerce); *United States v. Han*, 230 F.3d 560, 562-263 (2d Cir. 2000) (same). Section 2422(b) proscribes the

use of "any facility or means of interstate . . . commerce" to persuade, induce, entice or coerce any individual under the age of 18 to engage in illicit sexual activity. As we recently stated in *MacEwan*, the "facility of interstate commerce" involved in this case – the Internet – is both "an instrumentality and channel of interstate commerce." *See* 2006 WL 861184 at *6 n.8; *see also United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 161 (3d Cir. 2005) ("The Internet is a channel of commerce covered by the federal statutes regulating the distribution of obscenity."). Accordingly, both § 2423(b) and § 2422(b) represent constitutional exercises of Congress's Commerce Clause power to regulate the use of the channels and instrumentalities of interstate commerce.[6]

---

[6] Tykarsky also argues that no reasonable juror could have found the jurisdictional element of either § 2422 or § 2423(b) satisfied. Again, we disagree. Tykarsky lived and worked in New Jersey and his car was registered there. He was arrested at the Holiday Inn in Philadelphia, Pennsylvania on May 21, 2003. There was ample evidence from which the jury could infer that Tykarsky traveled interstate, as required for a conviction under § 2423(b). *See United States v. Abadie*, 879 F.2d 1260, 1266 (5th Cir. 1989) (concluding that there was sufficient evidence of interstate travel to sustain a conviction under the Travel Act, 18 U.S.C. § 1952, where defendant lived in Louisiana and was observed by agents arriving at a gas station in Mississippi). The Government also showed that Tykarsky communicated with the putative minor via the Internet, which is all that is required to satisfy the jurisdictional element of § 2422(b). *See MacEwan*, 2006 WL 861184 at *6 (stating that proof of transmission over the Internet is sufficient to satisfy the analogous jurisdictional

## IV. First, Fifth and Eighth Amendment Challenges to 18 U.S.C. § 2423(b)

Tykarsky next argues that he cannot constitutionally be charged under 18 U.S.C. § 2423(b) for doing nothing more than traveling to another state with the intent prohibited by that section. He contends that the statute lacks a "meaningful actus reus" and punishes the mere act of thinking while traveling, in violation of his rights under the First, Fifth and Eighth Amendments. We reject this contention.

As other courts of appeals have observed, it is clear that § 2423(b) does not punish thought alone. At least one act must occur for an individual to be convicted under § 2423(b): crossing a state line. *See Bredimus*, 352 F.3d at 208 ("Consistent with our fellow circuits, therefore, we find that Section 2423(b) does not prohibit mere thought or mere preparation because it requires as an element that the offender actually travel in foreign commerce."); *United States v. Gamache*, 156 F.3d 1, 8 (1st Cir. 1998). That § 2423(b) contains an actus reus component, however, does not alone make it constitutional. The government cannot punish what it considers to be an immoral thought simply by linking it to otherwise innocuous acts, such as walking down the street or chewing gum. If § 2423(b) proscribed interstate travel with the mere abstract intent to engage in sexual activity with a minor at some undetermined point in the future, this would be a more difficult case.

---

element of § 2252A(a)(2)(B), regardless of whether the transmission crosses state lines).

But it does not. Contrary to Tykarsky's characterization, the relationship between the mens rea and the actus reus required by § 2423(b) is neither incidental nor tangential. Section 2423(b) does not simply prohibit traveling with an immoral thought, or even with an amorphous intent to engage in sexual activity with a minor in another state. The travel must be *for the purpose* of engaging in the unlawful sexual act. *See United States v. Hayward*, 359 F.3d 631, 638 (3d Cir. 2004) (holding that the government must show that the criminal sexual act was a dominant purpose of the trip, not a merely incidental one). By requiring that the interstate travel be "for the purpose of" engaging in illicit sexual activity, Congress has narrowed the scope of the law to exclude mere preparation, thought or fantasy; the statute only applies when the travel is a necessary step in the commission of a crime.[7]

---

[7] Even if we were able to conceive of some exceptional circumstances in which § 2423(b) could be unconstitutionally applied, this is not such a case. Tykarsky went well beyond mere thought and preparation; he communicated those thoughts to a putative minor, arranged a meeting at a hotel and traveled across state lines for the purpose of engaging in sexual activity with a minor. *See United States v. Han*, 230 F.3d at 563 (refusing to consider the argument that § 2423(b) prohibited mere thought because it was clear that the defendant "engaged in acts beyond mere thinking, evidenced by his telephonic communications in which he developed a plan and articulated a purpose to cross interstate lines to engage in sexual acts with a thirteen-year-old[,]" and then "manifested the prohibited intent by doing so and by going to the arranged meeting spot"); *Gamache,* 156 F.3d at 8 (observing that the constitutionality of

Tykarsky contends that because it is not a crime to travel interstate, criminalizing travel with intent to commit a crime constitutes a "content-based restriction of a person's private thought processes." (Tykarsky Br. at 67.) This argument is misplaced. That the legality of a physical act turns on criminal intent is hardly a novel proposition. If criminal laws could not look to intent and motivation to distinguish lawful conduct from unlawful conduct, virtually every crime with a mens rea requirement would be invalidated on the ground that it constitutes a "thought crime." *See Gamache*, 156 F.3d at 8 ("Proof of intent naturally means proving state of mind, but that does not mean that one is punishing 'mere thought' any more than that the requirement of proving mens rea in most crimes means that one is solely punishing 'mere thought.'"). For example, buying a gun and standing outside someone's home may be perfectly legal, but doing so with the subjective intent of shooting the person who comes out could constitute attempted murder. *See, e.g., United States v. Contreras*, 950 F.2d 232, 237 (5th Cir. 1991). Section § 2423(b) does not punish "thought" any more than the hundreds of crimes for which criminal liability turns on subjective intent. Accordingly, neither the First nor the Eighth Amendment prohibits the criminalization of the conduct here.[8]

---

punishing "'mere thought' may pose an interesting subject for academic discourse," but "that is not the way this statute is being applied to appellant").

[8] Tykarsky's Eighth Amendment challenge mirrors his First Amendment challenge: he contends that it is "cruel and unusual" to punish someone for his or her thoughts alone. (Tykarsky Br.

We also reject Tykarsky's contention that § 2423(b) "impermissibly burdens" his fundamental right to travel under the Fifth Amendment. As the Court of Appeals for the Fifth Circuit observed in *Bredimus*, "[w]hile the right to travel is well-established, no federal court has ever held that an individual has a fundamental right to travel for an illicit purpose." 352 F.3d at 210 (citing *Hoke v. United States*, 227 U.S. 308, 320-323 (1913)). Even if we were to accept the proposition that § 2423(b) interferes with Tykarsky's fundamental right to travel, Congress clearly has a compelling interest in punishing individuals who travel interstate to engage in illicit sexual activities with minors, and § 2423(b) is narrowly tailored to serve that interest. *See United States v. Burton*, 475 F.2d 469, 471 (8th Cir. 1973) ("The citizen's right to travel is subordinate to the Congressional right to regulate interstate commerce when the travel involves the use of an interstate facility for illicit purposes.").

## V.     Vagueness and Overbreadth and § 2422(b)

Tykarsky next argues that § 2422 is vague and overbroad on its face in violation of the First Amendment. Again, we disagree. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). A statute is void for vagueness if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as

at 67.)

28

to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).[9]

Section 2422(b) is not overbroad. There is no First Amendment right to persuade minors to engage in illegal sex acts. *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."). Section 2422(b) regulates only conduct, not speech. As the Court of Appeals for the Ninth Circuit observed in *United States v. Meek*: "No otherwise legitimate speech [is] jeopardized by § 2422(b)

---

[9] The vagueness doctrine is similar – but not identical – to the overbreadth doctrine. *See Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (explaining that "traditionally viewed vagueness and overbreadth as logically related and similar doctrines"). Both doctrines can nullify an ambiguous law that "chills" protected First Amendment activities. But unlike the overbreadth doctrine, the vagueness doctrine was designed to guarantee fair notice and nondiscriminatory application of the laws, thus reflecting its roots in the due process clause. *See Waterman v. Farmer*, 183 F.3d 208, 212 n.4 (3d Cir. 1999). The vagueness doctrine also has more stringent standing rules, requiring that the person raising it show that he himself has been injured by the overly broad language. *See Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 225 (3d Cir. 2004) ("[I]f the challenged regulation clearly applies to the challenger's conduct, he cannot challenge the regulation for facial vagueness.").

29

because the statute only criminalizes conduct, i.e., the targeted inducement of minors for illegal sexual activity. . . . [S]peech is merely the vehicle through which a pedophile ensnares the victim." 366 F.3d at 721. Moreover, "the scienter and intent requirements of the statute sufficiently limit criminal culpability to reach only conduct outside the protection of the First Amendment." *United States v. Dhingra*, 371 F.3d 557, 561-562 (9th Cir. 2004) (observing that a family planning provider could not be prosecuted under § 2422(b) unless it *knew* that it was persuading minors to engage in illicit sexual conduct). Accordingly, § 2422(b) is not overbroad.

Albeit a closer question, we also conclude that § 2422(b) is not unconstitutionally vague. Although § 2422(b) does not define the terms "persuade," "induce," "entice" and "coerce," they "have a plain and ordinary meaning that does not need further technical explanation." *Id.* at 562; *see also Batsell v. United States*, 403 F.2d 395, 399 (8th Cir. 1968) ("The word 'induces' in § 2422 is one of common usage and meaning and requires no explanation or definition."). To be sure, there may be a certain degree of imprecision around the edges of these terms, such as where the line between mere "asking" and "persuading" is drawn. But any ambiguity in § 2422(b) is no greater than that found in many criminal statutes. These terms are sufficiently precise to give a person of ordinary intelligence fair notice as to what is permitted and what is prohibited and to prevent arbitrary and discriminatory enforcement. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (observing that fair warning and the prevention of arbitrary enforcement are two of the most important values offended by vague laws). Moreover, the absence of definitions for these terms poses no

30

danger of chilling legitimate speech. The statute's scienter requirement clarifies the law and excludes legitimate activity, including pure speech, from its scope. *Dhingra*, 371 F.3d at 562; *United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003) ("[Section 2422(b)'s] scienter requirement discourages 'unscrupulous enforcement' and clarifies § 2422(b)."); *see also United States v. Loy*, 237 F.3d 251 (3d Cir. 2001) ("[I]n some situations, a scienter requirement may mitigate an otherwise vague statute[.]"). We therefore conclude that § 2422(b) is not impermissibly vague.

## VI. Sixth Amendment Grand Jury Clause

Tykarsky next contends that the District Court violated the Grand Jury Clause of the Sixth Amendment by allowing the jury to convict him of offenses that differed from those charged in the indictment. Count One of the indictment charged Tykarsky with traveling in interstate commerce "for the purpose of engaging in, and attempting to engage in, illicit sexual conduct." In instructing the jury, however, the Court, consistent with the text of § 2423(b), omitted the "attempting to engage in" language and charged the jury that it had to find only that Tykarsky "traveled in interstate commerce . . . for the purpose of engaging [in illicit sexual activity]." Count Two of the indictment charged Tykarsky with using the Internet "to attempt to knowingly persuade, induce, entice *and* coerce a person under eighteen years of age to engage in sexual activity for which the defendant could be charged with a criminal offense, that is, statutory rape." In instructing the jury, however, the District Court described Count Two as charging him with using a computer "to attempt to knowingly to [sic] persuade, induce, *or*

entice a person the defendant believed to be under the age of 16 to engage in statutory rape."

Tykarsky's challenge fails. "His complaint is not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary." *United States v. Miller*, 471 U.S. 130, 140 (1985). The Supreme Court has observed that a defendant's right to be tried on the charges set forth in the indictment is not impaired where the indictment alleges more acts than are necessary for conviction. *See, e.g.*, *id.* at 136 ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of communicating the same crime."); *Salinger v. United States*, 272 U.S. 542, 548-549 (1926) (holding that there was "not even remotely an infraction of the constitutional provision that 'no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment to the grand jury'" where the district court submitted to the jury only one of several fraudulent schemes charged in the indictment).

Here, the District Court's decision to omit the "coercion" ground in Count Two and to charge the jury in the disjunctive, rather than the conjunctive, amounted only to a *narrowing* of the charged offense. Similarly, its omission of the unnecessary allegation in Count One of the indictment that Tykarsky "attempt[ed] to engage in . . . illicit sexual activity" also only *narrowed* the charged offense. As in *Miller*, "[t]he variance[s] complained of added nothing new to the grand jury's indictment

32

and constituted no broadening" of the charged offense. 471 U.S. at 145; *see also Turner v. United States*, 396 U.S. 398, 420 (1970) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."). As a result, Tykarsky can show no "compromise of his right to be tried only on offenses for which the grand jury has returned an indictment," *Miller*, 471 U.S. at 145, and his claim therefore fails.[10]

---

[10] Tykarsky also argues that the indictment was defective because, although it largely tracked the language of the relevant statutes, it failed to charge "specific intent" and erroneously specified that the victim had to be under the age of 18 rather than 16, the age of majority for statutory rape under New Jersey and Pennsylvania law. We reject this argument. Although the indictment recited the age of 18, it also specified that the sexual activity must be of the type "for which the defendant could be charged with a criminal offense, that is, statutory rape." It therefore required a finding that the victim was under the age of 16. *See Gov't of the Virgin Islands v. Moolenaar*, 133 F.3d 246, 249 (3d Cir. 1998) ("Failure to allege the statutory elements will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication.") (quoting 24 Moore's Federal Practice § 607.04[2][b][ii] (3d ed. 1997)). For similar reasons, we also conclude that the failure to explicitly recite the element of specific intent is not fatal to the indictment. It states all of the essential elements of the crime by necessary implication and meets all of the requirements of Rule 7(c)(1) of the Federal Rules of Criminal Procedure. *See United States v. Hodge*, 211

## VII. Sixth Amendment Right to Confrontation

Tykarsky complains also that the District Court violated his Sixth Amendment Confrontation Clause rights by restricting his cross-examination of the undercover FBI agent, Special Agent Nester, and the FBI's case agent, Special Agent DeFazio. The District Court limited Tykarsky's cross-examination regarding a number of subjects, viz., the location of the undercover computer from which Special Agent Nester communicated with Tykarsky, communications that were not in the record, the agent's opinion as to whether Instant Messenger communications are "fraught with fantasy," the agent's view of Tykarsky's state of mind during the communications and at the time of arrest, the agent's knowledge of the mandatory minimum sentence amendment to § 2422(b), the agent's failure to "develop her own online character," and FBI practices in undercover investigations and post-arrest interrogations, among other topics.

Limitations on cross-examination are reviewed for abuse of discretion. *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005). Although the Confrontation Clause guarantees the right of a criminal defendant to confront witnesses for the purpose of cross-examination, a district court retains "'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice,

F.3d 74, 77 (3d Cir. 2000) (holding that although specific intent is an element of the Virgin Islands robbery statute, the failure to explicitly recite it is not fatal to an indictment).

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678-679 (1986)).

We agree with the Government that the restrictions of which Tykarsky complains were well within the District Court's discretion. The District Court only restricted cross-examination where it was repetitive of other testimony, confusing or irrelevant. The District Court permitted Tykarsky to cross-examine Special Agents Nester and DeFazio thoroughly.[11] Tykarsky questioned the agents extensively regarding the reliability of determining Instant Messenger identities, the use of fantasy in chat rooms and communications that were purportedly missing from the record. The District Court only sustained objections to this testimony when the questions were misleading or repetitive. The District Court also permitted cross-examination regarding the use of decoys in undercover investigations and FBI policy on recording interviews. It only restricted questioning when it became repetitive or when counsel was attempting to testify about FBI practices in other cases.[12] The District Court also permitted cross-examination

_____

[11] Although whether a trial court unduly restricted cross-examination should be evaluated in terms of quality rather than quantity, we note that the record contains 138 pages of cross-examination of Special Agent Nester and 40 pages of cross-examination of Special Agent DeFazio.

[12] After Special Agent DeFazio testified that "[t]he bureau policy is we do not record interviews" and that the FBI never records interviews, Tykarsky's counsel attempted to ask him about another recent case in the same courthouse where the

interview was recorded. The Government objected and the District Court sustained the objection, telling counsel he was not permitted to testify about another case. When counsel attempted to rephrase the question by asking the witness whether she was familiar with that case, the Court cut him off, stating that it was a collateral issue. Although we have doubts about whether this objection should have been sustained – it was not wholly collateral and questioning could have been limited later on – we do not believe that the ruling rose to the level of an abuse of discretion. Moreover, even if we were to find error, it was clearly harmless.

In a related argument, Tykarsky contends that the prosecution, by failing to correct Special Agent DeFazio's testimony, knowingly presented false testimony in violation of the rule in *Napue v. Illinois*, 360 U.S. 264 (1959), and failed to disclose relevant *Brady* material. According to the FBI Agent's Handbook, which defense counsel obtained under the Freedom of Information Act after the close of the evidence, the FBI permits the recording of confessions or interviews, in contradiction of Agent DeFazio's testimony. Even assuming that Agent DeFazio's testimony was false and the prosecution was aware of this, however, Tykarsky's claim nonetheless fails. He has not shown, and cannot show, any prejudice or substantial injustice resulting from this testimony. Tykarsky's argument is that the agent's testimony gave the FBI's failure to record the post-arrest statement an "institutional imprimatur," and that had the jury known that the FBI could have recorded the statement, it would have assumed that it chose not to do so for a reason, and that the reason was to create a fabricated statement or force a confession. This series of assumptions is simply too fantastic

regarding the plan of arrest at the Holiday Inn, limiting it only when defense counsel asked the agents to speculate as to Tykarsky's intent and state of mind.

In sustaining other prosecution objections, the District Court acted well within its discretion to restrict irrelevant and confusing testimony. For example, Special Agent Nester's impressions of Tykarsky's state of mind and her knowledge that the PROTECT Act imposed a minimum sentence of five years for violating § 2422(b) are irrelevant.[13] And because the mere

---

to require reversal, especially in light of Tykarsky's failure to present any evidence calling into question either the content of the post-arrest statement or the conditions under which it was made.

[13] This line of questioning relates to Tykarsky's contention that he was eligible for a downward departure based upon "sentencing entrapment" and/or "sentencing factor manipulation." We agree with the District Court that even if we recognized sentencing entrapment as a basis for a downward departure, *see United States v. Raven*, 39 F.3d 428, 438 (3d Cir. 1994) (observing that this Court has not yet recognized sentencing entrapment), the doctrine has no application here. "Sentencing entrapment or 'sentence factor manipulation' occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir. 1994) (quotation omitted); *see Raven,* 39 F.3d at 438 (defining sentencing entrapment as "'outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities for the

use of the Internet is sufficient to satisfy the jurisdictional element of § 2422(b), the precise location of the computer that Special Agent Nester used to communicate with Tykarsky is also irrelevant.[14]   Accordingly, Tykarsky has failed to demonstrate that the District Court exceeded the permissible bounds of discretion in restricting cross-examination.

---

purpose of increasing the amount of drugs . . . and the resulting sentence of the entrapped defendant.'") (quoting *United States v. Rogers*, 982 F.2d 1241, 1245 (8th Cir. 1993)); *see also United States v. Montoya*, 62 F.3d 1, 3 (1st Cir. 1995) (recognizing sentencing entrapment where "government agents have improperly enlarged the scope or scale of the crime").  Even assuming that the FBI intentionally delayed the sting operation until after April 30, 2003 so that Tykarsky would be subject to the enhanced penalties prescribed by the PROTECT Act, such conduct was not outrageous, *see Raven*, 39 F.3d at 438, and it did not result in the commission of a "greater offense," *see Staufer*, 38 F.3d at 1106.  Rather, it only affected the timing of the offense.

[14] Tykarsky contends that the District Court improperly limited his ability to challenge Special Agent Nester's "bias, credibility and reliability," and that if he knew the location of the computer he might be able to show that Special Agent Nester was not where she said she was.  That the answer to a question could possibly later give rise to impeaching evidence, however, does not make the question proper.  Absent any reason to doubt that Special Agent Nester was involved in the operation, it is irrelevant precisely where the computer she used was located.

## VIII.  Other Contentions

Tykarsky's other attacks on his conviction merit little discussion.  He challenges the District Court's rejection of various proposed jury instructions, including instructions regarding absence of evidence, thoughts, preparation, action, equivocation, intention, attempt, statements, that engaging in criminal sexual activity had to be "the" dominant purpose of the interstate travel, that the travel had to be on May 21, and the impact of the April 30, 2003 amendment to the PROTECT Act. We have reviewed the proposed instructions and the instructions submitted to the jury and conclude that the latter "fairly and adequately" present the issues in the case without confusing or misleading the jury. *United States v. Simon*, 995 F.2d 1236, 1243 n.11 (3d Cir. 1993).  As we have said before, "[a] defendant is not entitled to a jury instruction of his own choosing." *United States v. Ellis*, 165 F.3d 493, 498 n.7 (3d Cir. 1998).

We reject also Tykarsky's contention that the Government denied him a fair trial by improperly preparing his exhibit book and making an improper rebuttal argument. Government Exhibit 20 was a picture of Special Agent Nester as a minor.  The image in the exhibit book provided to Tykarsky contained a photocopy of this image along with handwritten notations at the bottom.  Defense counsel used the copy of the picture in the exhibit book to question the integrity of the evidence, arguing that the prosecution had torn off the notations at the bottom. The prosecution responded by pointing out that the actual exhibit provided to the jury did not have any notations and that any notations on the defense copy were irrelevant. We cannot discern any prejudice resulting from this confusion.

Although the prosecution should have provided a true and correct copy of the exhibit, this hardly rises to the level of reversible error.

Tykarsky also argues that his post-arrest statement should have been excluded because of the FBI's failure to electronically record it. *See Stephan v. State*, 711 P.2d 1159-1160 (Alaska 1985) (holding that the failure to record an interrogation is a violation of the due process clause of the Alaska Constitution); *States v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994) (holding that the failure to record an interrogation is a violation of the due process clause of the Minnesota Constitution). Whatever the merits of the policy arguments in favor of requiring the recording of interrogations may be, it is clear that such recording is not mandated by the United States Constitution. We therefore reject this argument.

Tykarsky also alleges various *Brady* violations. He refers to potentially exculpatory *Brady* material throughout his brief and contends that the District Court erroneously denied his post-conviction, pre-sentencing motion for discovery of exculpatory evidence. With respect to many of the documents that Tykarsky alleges were not disclosed – such as a list of "any and all times that the agent was online or any information that would in any way contradict her trial testimony should be produced or provided to the defense," a missing Internet Messenger conversation regarding a soccer game, Special Agent Nester's Internet profile as it existed on May 21, 2003, interview notes from the post-arrest interview, and the other chat room postings from the time of the initial conversation between Tykarksky and Special Agent Nester to show the "environment" – there is no proof that they exist, and there is no evidence of any bad faith in

failing to preserve them. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").  Moreover, even if such documents do exist, it is plain from the record that their nondisclosure, even when considered cumulatively, neither prejudiced Tykarsky nor affected the fairness of the proceedings.  *See United States v. Agurs*, 427 U.S. 97, 109-110 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.").[15]

Having concluded that all of Tykarsky's attacks on his conviction are meritless, we now turn to Tykarsky's ex post facto challenge to his five-year sentence.

## IX.  Ex Post Facto Application of Mandatory Minimum Sentence

---

[15] We also conclude that the District Court properly denied Tykarsky's motion for post-conviction discovery. The primary piece of evidence sought by Tykarsky was a record of a telephone call Tykarsky made to his employer after he was arrested.  He contends that this record will show that the post-arrest interview took place at a different time than the Government stated at trial.  We agree with the District Court that this was not a proper subject of post-conviction discovery.  Moreover, we fail to apprehend the significance Tykarsky attaches to this evidence and the inference that either the District Court or we should derive from it.

As we have noted, Tykarsky was convicted of attempting to persuade, coerce, entice or induce an underage person to engage in illegal sexual activity through the Internet, in violation of 18 U.S.C. § 2422(b). Pursuant to Section 103 of the PROTECT Act, 117 Stat. 650, which took effect on April 30, 2003, Congress amended § 2422(b) to require a minimum sentence of five years. The evidence that Tykarsky violated § 2422 consisted of nine email and Instant Messenger conversations. The two initial communications were made prior to April 30, 2003 – on April 22 and April 24 – while seven others were made after April 30, 2003. Notwithstanding that the communications straddled the date of the PROTECT Act, the District Court did not provide the jury with a special verdict form. Accordingly, the jury did not make any specific findings as to when the § 2422(b) violation occurred.

At sentencing, Tykarsky objected to the use of the amended version of the statute with its five-year mandatory minimum. He argued that the absence of a special verdict regarding the date of the violation precluded the Court from imposing the mandatory minimum. The District Court rejected this argument, concluding that because the only communications arranging the May 21, 2003 meeting at the Holiday Inn were made after April 30, the jury's conviction on Count One – traveling interstate to engage in illegal sexual activity – necessarily required a finding that Tykarsky violated § 2422(b) after April 30. It therefore imposed the mandatory minimum of five years.[16]

---

[16] 18 U.S.C. § 2423(b), the offense charged in Count One, does not carry a mandatory minimum sentence.

Tykarsky now challenges his sentence on appeal. Absent a special verdict, he contends, there is no way to know whether the jury may have convicted him under § 2422(b) based solely on his conduct prior to April 30, in which case the imposition of the mandatory minimum would violate the Ex Post Facto Clause. The Government concedes that it would violate the Ex Post Facto Clause to impose the mandatory minimum sentence for crimes solely committed prior to April 30, 2003, but asserts that this was a "continuing offense." That is, under the Government's theory, all of the communications formed part of a single, continuing plan to meet the putative minor at the Holiday Inn for the purpose of engaging in sexual activity. Like a conspiracy, the Government argues, the continuation of the offense past the date of the enhancing statute would resolve any ex post facto problems. *See United States v. Harris*, 79 F.3d 223, 229 (2d Cir. 1996) ("It is well-settled that when a statute is concerned with a continuing offense, 'the Ex Post Facto clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of [the statute].'") (citations omitted).

Because we conclude that this argument was not properly raised below, our review is for plain error.[17] To establish plain

---

[17] The parties disagree on the appropriate standard of review. Before the instructions were given to the jury, defense counsel objected as follows:

> [W]e ask, one, that the Court not instruct at all on punishment. And, secondly, in this particular case, I think it's appropriate for the Court, if it's

error, Tykarsky must show that: (1) an error occurred, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error is one seriously affecting the fairness, integrity or public reputation of judicial proceedings, such that the court should exercise its discretion to correct the error. *Johnson v. United States*, 520 U.S. 461, 466-467 (1997).

**A.**

---

> going to do that, that we instruct that this is a mandatory minimum of five years that happened – that straddled this case, because this case covered from 4/22 to 5/20, and on 4/30 the law changed. And there's facts in this case that I think can suggest that it was important for the jury to know the time of the change in law.

(App. at 779.)

We agree with the Government that this request was insufficient to preserve the issue. Defense counsel appears to be requesting that the jury simply be informed of the potential sentence, which is improper. Although he draws attention to the change in law and makes a vague reference to it being significant to the "facts in this case," he never requests a special verdict form or states that the jury must find that Tykarsky committed that crime after April 30. Although this objection is sufficient to convince us that defense counsel was not "sandbagging," *see United States v. Syme*, 276 F.3d 131, 154 n.9 (3d Cir. 2002) (noting that evidence of sandbagging weighs against finding plain error), it is nonetheless an inadequate objection.

44

We agree with Tykarsky that because the communications spanned two different versions of the statute with different minimum penalties, the question of whether the violation extended beyond the effective date of the amended version was one that had to be resolved by the jury.[18] The Ex Post Facto Clause proscribes any law that "'changes the punishment, and inflicts a greater punishment, than the law

_____

[18] The Government argues that *Harris v. United States*, 536 U.S. 545, 560-568 (2002), permits judicial fact-finding in these circumstances. We disagree. *Harris* held that Congress may condition mandatory minimums on judicial findings so long as the sentence remains within the range authorized by the jury's verdict. *Id.* at 567. The date that Tykarsky violated § 2422(b) is not a "sentencing factor" as that term is used in *Harris*. Congress has not "'simply taken one factor that has always been considered by sentencing courts to bear on punishment . . . and dictated the precise weight to be given that factor.'" *Id.* at 568 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 89-90 (1986)). Indeed, Congress has not authorized any judicial fact-finding. *Cf. id.* at 567 ("The *political system* may channel judicial discretion – and rely upon judicial expertise – by requiring defendants to serve minimum terms after judges make certain factual findings.) (emphasis added). The date of the violation determines under which version of § 2422(b) Tykarsky should be sentenced, and the jury must therefore find beyond a reasonable doubt that an element of the crime occurred after the effective date of the PROTECT Act. *See, e.g., United States v. Torres*, 901 F.2d 205, 229 (2d Cir. 1990) (requiring a jury finding where amendment increased mandatory minimum from 10 years to life).

45

annexed to the crime when committed.'" *Miller v. Florida*, 482 U.S. 423, 429 (1987) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (opinion of Chase, J.)). "Thus, if a defendant completes a crime before an increased penalty takes effect, it would violate his right not to be subject to ex post facto legislation to impose the increased penalty upon him." *United States v. Julian*, 427 F.3d 471, 482 (7th Cir. 2005). This is true even if, as in this case, the law's minimum punishment is not greater than the old law's maximum punishment. *See Miller*, 482 U.S. at 432-433 (citing *Lindsey v. Washington*, 301 U.S. 397 (1937)). We also conclude that the error in not requiring a special jury finding was "plain" in that it was an obvious mistake in retrospect. *United States v. Olano*, 507 U.S. 725, 734 (1993) (observing that "plain" error is one which is "clear" or "obvious").

**B.**

We must next determine whether the error affected Tykarsky's substantial rights. *See Johnson*, 520 U.S. at 466-467. To "affec[t] substantial rights," the error must have been prejudicial. *Olano*, 507 U.S. at 734. Tykarsky has been prejudiced if there is a reasonable possibility that a jury, properly instructed on this point, might have found Tykarsky guilty based exclusively on acts that occurred before the increased penalty took effect. *See Julian*, 427 F.3d at 482 ("If a jury, properly instructed on this point, might have found that the conspiracy had come to an end before the increased penalty took effect or that Julian had withdrawn from the conspiracy before that date, then the error is one that implicates the fairness, integrity, or public reputation of the judicial process."); *United States v. Torres*, 901 F.2d 205, 229 (2d Cir. 1990) (finding plain

46

error where it was possible, though improbable, that the jury would have convicted based on pre-enactment conduct); *see also United States v. Dobson*, 419 F.3d 231, 239-240 (3d Cir. 2005) (finding plain error where there was a "reasonable likelihood" that the error affected the outcome). If, however, a reasonable jury could have concluded only that the attempted persuasion or enticement continued past April 30, then the error did not affect Tykarsky's substantial rights.

In *Julian*, the Court of Appeals for the Seventh Circuit ultimately determined that the lack of a specific jury finding regarding the dates of involvement in a conspiracy to travel in foreign commerce for the purpose of engaging in illicit sexual activity did not prejudice the defendant. 427 F.3d at 483. There, the penalty for engaging in a § 2423(b) conspiracy had increased on October 30, 1998. *Id.* at 480. There was no real dispute that the conspiracy to which the defendant belonged was in operation both before and after October 30; the sole question was whether a reasonable jury could have found that the defendant withdrew from the conspiracy prior to October 30. *Id.* at 483. After observing that it is not easy to withdraw from a conspiracy, that it is the defendant's burden to show that he did so, and that there was no evidence of any affirmative acts of withdrawal, the court concluded that no reasonable jury could have found that defendant withdrew from the conspiracy prior to October 30, 1998. *Id.*

Reviewing for harmless error, the Court of Appeals for the Second Circuit reached a similar conclusion in *United States v. Harris*, concluding that there was "no possibility" that the jury relied solely on conduct occurring before the enactment of a continuing financial crimes enterprise ("CFCE") statute. 79

47

F.3d at 229. The court observed that the district court's instruction expressly required the jury to find that Harris engaged in a "series of acts" that necessarily encompassed post-CFCE enactment conduct. *Id.*; *see also United States v. Williams-Davis*, 90 F.3d 490, 510 (D.C. Cir. 1996) (rejecting defendant's ex post facto claim where "there was no possibility that the jury finding could have rested solely on conduct preceding the critical date").

By contrast, in *United States v. Torres*, the Second Circuit, reviewing for plain error, found an ex post facto violation where the defendants were subjected to life sentences based on conduct that "straddled" the date that the mandatory life sentence provision went into effect. 901 F.2d at 229. Although the court agreed with the Government that it was highly improbable that the jury did not convict based on post-enactment acts, it nonetheless observed:

> It is clear that (1) it was the government's burden to prove all the elements of section 848(b) beyond a reasonable doubt; (2) the instruction and verdict form allowed a resolution of this issue against the Torres brothers and Flores whether or not they met the requirements of section 848(b)(1) on or after October 27, 1986; (3) the ex post facto rule requires such conduct on or after October 27, 1986, as a constitutional matter, as a basis for a conviction under section 848(b); and (4) as a result of the resolution of this issue adversely to them, these defendants were subjected to the mandatory life sentence imposed by section 848(b), rather than the ten years to life sentence

48

which would otherwise have been applicable under section 848(a).

*Id.* at 229. The court therefore concluded that the mere possibility, however remote under the facts, that the jury convicted based on pre-enactment acts was sufficient to constitute plain error and required a remand for resentencing. *Id.*

Here, we believe there is a possibility that a reasonable jury could have convicted Tykarsky based solely on the pre-April 30 communications. The District Court's reasoning takes the form of a classic non sequitur insofar as it concludes that the jury *must* have found that Tykarsky violated § 2422(b) after April 30 because it found that he communicated with the putative minor after that date to arrange the meeting at the Holiday Inn. The District Court's major premise is that § 2422(b) proscribes the attempted persuasion, inducement, enticement or coercion of a minor to engage in sexual activity. The minor premise is that Tykarsky arranged the meeting with the putative minor after April 30. But the District Court's conclusion – that Tykarsky therefore violated § 2422(b) – does not follow.

Section 2422(b) does not prohibit all communications with a minor; nor does it prohibit all communications that relate to illegal sexual activity. It only proscribes communications that actually or attempt to knowingly "persuade," "induce," "entice" or "coerce" a minor to engage in illicit sexual activity. That Tykarsky arranged the meeting with the putative minor after

49

April 30, therefore, does not establish that he violated § 2422(b) after that date.

The problem can be illustrated with a simple hypothetical. Assume that John Doe contacts Jane Minor on April 29 and that they engage in a long Instant Messenger conversation. He promises her various things and asks her to meet up with him for sex. But when he asks her if she is free that night, she says that her parents won't let her leave the house but that she would like to meet the next week. Three days later, on May 1, they engage in another Instant Messenger conversation in which they flirt with one another and schedule a meeting at the local Best Western on May 3. At what point did John Doe violate § 2422(b)? That is, when did the actual or attempted persuasion, inducement, enticement or coercion occur?

A jury could endorse the Government's view here that the communications should be considered together and that they constitute a "continuing offense" in violation of § 2422. It could also conclude that both the April 29 and the May 1 communications independently constituted violations of § 2422(b). But it is also possible for the jury to conclude that only the April 29 communication violated § 2422(b) and that the subsequent May 1 communication did not entail any enticement or persuasion. Indeed, if the April 29 conversation accomplished its purposes of persuading Jane Minor to engage in sexual activity, then there would be no need for any further persuasion or enticement.

As in both this hypothetical and *Torres*, here there is at least a possibility that the jury convicted Tykarsky based solely

on pre-PROTECT Act conduct. A reasonable jury could have concluded that because "HeatherJet14" already indicated a willingness to engage in sexual activity in the earlier communications, the later communications were either not sufficiently objectively persuasive to constitute a substantial step or were not written with the requisite intent to induce or persuade, *see Dhingra*, 371 F.3d at 562-563 (observing that § 2422(b) requires not only that the communication be objectively persuasive, but that they be made with the intent to persuade). This case is not like *Julian*, where the defendant had the burden of proving withdrawal and did not introduce any evidence. It is also unlike *Harris*, where the district court's instructions required the jury to convict the defendant based on post-enactment acts. The most that can be said here is that it is improbable, rather than impossible, as a *factual matter*, that the jury convicted Tykarsky exclusively on the basis of pre-April 30 acts. This, however, is insufficient to persuade us that Tykarsky's substantial rights were not affected.

Moreover, we should be especially cautious in making assumptions about how a properly instructed jury would have found where, as here, the statute under which the defendant was convicted vests broad discretion in the jury. Although we have concluded that § 2422(b) is not unconstitutionally vague, *see supra* Section V, we have also observed that the terms "persuade," "entice," induce" and "coerce" are somewhat imprecise, requiring the consideration of subtle nuances in a given fact pattern. For example, how much more is needed than simply asking? Can a person be guilty if the minor has already indicated that he or she wants to engage in sexual activity? The absence of statutory guidance indicates that the jury, rather than an appellate court, should decide whether and when the

defendant crossed the line from mere conversation to attempted persuasion, inducement, enticement or coercion.

## C.

We turn now to the fourth element of plain error review: whether the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. In light of the Government's burden of proving all elements beyond a reasonable doubt and the possibility that the jury convicted Tykarsky based solely on pre-PROTECT Act conduct, we conclude that the District Court's failure to require a special verdict tainted the integrity and reputation of the judicial process. The proscription against ex post facto laws is "fundamental to our concept of constitutional liberty." *Marks v. United States*, 430 U.S. 188, 191-192 (1977); *see also* The Federalist No. 44, p. 282 (C. Rossiter ed. 1961) ("[E]x post facto laws . . . are contrary to the first principles of the social compact and to every principle of sound legislation."). Tykarsky was sentenced to a mandatory minimum pursuant to a statute – the amended version of § 2422(b) – that no jury ever specifically found that he had violated. We therefore conclude that sentencing Tykarsky to the mandatory minimum prescribed by the PROTECT Act constitutes plain error, and we will vacate his sentence.[19]

_____

[19] Because we will remand for resentencing, we do not reach Tykarsky's contention that the District Court erred in denying a motion to compel the prosecution to file a motion for a downward departure. *See Wade v. United States*, 504 U.S. 181, 185 (1992) (holding that the prosecution's failure to file a

\* \* \*

      We have considered all other assignments of error and conclude that they do not merit discussion.  For the foregoing reasons, we will affirm Tykarsky's convictions for violating 18 U.S.C. §§ 2422(b) & 2423(b), vacate his sentence, and remand to the District Court for additional proceedings consistent with this opinion.

---

motion for downward departure can be reviewed for an unconstitutional motive).  We also do not express any opinion on the question, raised at oral argument, of whether the District Court must sentence Tykarsky under the pre-PROTECT Act version of § 2422(b) or whether it could empanel a new jury to determine the date of the violation.