RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

No. 18-2354

ANTONIO VINTON, JR.,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:18-cr-20553-1—Marianne O. Battani, District Judge.

Argued: October 16, 2019

Decided and Filed: January 2, 2020

Before: MOORE, McKEAGUE, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Sheldon N. Light, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Jonathan Epstein, FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee. **ON BRIEF:** Sheldon N. Light, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellant. Jonathan Epstein, Laura Danielle Mazor, FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

McKEAGUE, Circuit Judge. Antonio Vinton was indicted for attempting to use a facility of interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). The district court dismissed the

indictment under Federal Rule of Criminal Procedure 12, concluding that Vinton's conduct did not fit the elements of the crime as a matter of law, because a reasonable juror could not find beyond a reasonable doubt that he had the requisite intent to persuade or entice a minor. Because we find that the government could prove that Vinton intended to persuade or entice a minor to assent to unlawful sexual activity, we **REVERSE** the judgment of the district court and **REMAND** for trial.

# I

This case comes to us in an unusual posture. The district court dismissed the indictment before trial based on the insufficiency of the government's evidence. The government argues that this was procedurally and substantively improper. Vinton disagrees.

The idea of a motion to dismiss first came up at Vinton's detention hearing. Amidst arguments about whether the court should grant bond, the defense also argued that "there was a mistake of law at the initial bond hearing" and that "this case [was] not properly pled under the statute." The government disagreed with the defense's interpretation of the law, saying that Vinton was properly charged under the statute, but it also suggested that "if [defense counsel] believes that the law is different, th[en] . . . he could bring a motion to dismiss before your Honor and we can set forth the facts that we believe we can prove at trial."

Vinton did just that. He filed a motion to dismiss his indictment under Federal Rule of Criminal Procedure 12(b). But Vinton's primary argument was not based on an error on the face of the indictment or a mistake of law. Instead, Vinton argued that the indictment "fail[ed] to state an offense" because there was "insufficient evidence" that Vinton had the "requisite intent to solicit a minor."[1] Vinton stipulated to the evidence the government had put forward in the criminal complaint and its filings before the district court, and he argued that it wasn't enough to show an intent to persuade or entice a minor. The government replied to Vinton's motion, contending that it was improper for the district court to weigh the sufficiency of the evidence before trial, as intent is a question of fact that is reserved for the jury. Further, it argued that

---

[1]Arguably, Vinton also raised a latent legal argument. *See infra* Part II.B.1. But he framed his argument as a sufficiency-of-the-evidence argument, and the government and court responded to it as such.

there *was* sufficient evidence to show that Vinton intended to entice a minor. The government did not specify whether it agreed to proceed on a stipulated record,[2] and it set forth the facts anew.

According to the government, an undercover FBI analyst posted a "shout" on a social media application called Whisper, which allows its users to post, share photos, and message other users anonymously. The analyst's post featured what the record describes as a photo of an "adult female[3] in a provocative pose" superimposed with the text "Anybody into [name of known series of child pornography[4]]?? ##Tab00." Vinton responded to the post, by sending a private message to the analyst saying that he was "[j]ust into taboo." When the analyst replied that she was "into incest and young," Vinton added that he also liked "incest and younger women." The analyst described herself as a thirty-six-year-old female with a daughter, and she said, "I think what I'm interested in is not what your [sic] into." Vinton responded, "you want me to f*** your daughter . . . [a]nd you[?]" The analyst said, "that would be hot" and explained that she and her daughter had done this before with the analyst's fictitious husband, who had since died. Vinton replied, "So [your daughter] would do it[.] I would love to try something like that." Vinton warned that he was "old enough to be [the analyst's] father," but the analyst replied that her "daughter is 12 she needs a good grandad."

The analyst and Vinton proceeded to have an extended conversation about the three of them—Vinton, the purported mother, and her fictitious twelve-year-old daughter—meeting to have sex. Vinton asked in graphic detail what specific sexual acts the daughter could and would perform. The analyst answered his questions and insisted that Vinton be gentle with the minor and make sure the child enjoyed herself. Vinton said he "would be very gentle" and suggested

---

[2]At one point, the government did refer to the facts in passing as "stipulated facts."

[3]It is unclear how young the woman looked in the photo. In its appellant brief, the government describes the pictured female as a "young girl." But the government's filings in the district court described the pictured female as an "adult female." In a hearing in front of the district court, the defense said that it "look[ed] like it could be a young woman of 18. . . . [T]his picture could be a young adult. A young buxom girl frankly." Because we don't have the picture in the appellate record, we can't determine how young the woman looked. But the filings in the district court generally described the woman as an adult.

[4]The government redacted the name of the series to "prevent the further dissemination of child pornography." But it described the series as "a known series of child pornography that depicts a prepubescent or young teenage girl."

that the FBI analyst could "help with that." Vinton also requested that they exchange photos. The analyst sent a photo of the fictitious daughter, but never sent a photo of herself. Vinton asked several more times for the analyst's photo and sent two photos of himself. First, Vinton sent an unsolicited photo of male genitalia, ostensibly his own, and asked "[d]o you think both of you will like this[?]" Later, Vinton also sent a photo of his face. Vinton never spoke directly to the daughter, but he expressed his interest in both the analyst and her daughter several times, confirming that all three would have sex and saying things like "I do want to f*** both of you[.]" Vinton also expressed concern about apprehension by authorities at various points, saying "your daughter scares me a lot," "there is a lot of risk for me," and "something I am also worried about [i]s the cops." But Vinton followed up his concerns each time by affirming his desire to go through with the plan, saying "but I would like to try it" and "I do want to do this . . . ."

The pair turned to logistics. Vinton said, "Let's do this Thursday but both of you have to be naked when I get there is that okay." The analyst responded that they should meet in a public place instead, and Vinton agreed. When Vinton showed up at the chosen meeting place and followed the analyst to her purported home, he was arrested. With Vinton's consent, the police searched his vehicle at the scene, and they found condoms, his phone, and $1,400 in cash. Vinton was then indicted for using a facility of interstate commerce to attempt to persuade, induce, entice, or coerce an individual under the age of eighteen to engage in an unlawful sexual activity. 18 U.S.C. § 2422(b).

The district court reviewed these facts and held a hearing on Vinton's motion to dismiss. At the hearing, Vinton said again that the parties had agreed to proceed on a stipulated record, which the government did not dispute, and repeated his argument that the record didn't show that Vinton "inten[ded] to persuade, induce, or coerce" a minor. The court agreed with Vinton, concluding that Vinton had passively acquiesced to the mother's request for him to have sex with her daughter and that his true objective was sex with the mother. Therefore, although Vinton may have intended to have sex with a child, the court found that there wasn't sufficient evidence that he intended to persuade or entice the child, as is required by § 2422(b). The district court concluded that no reasonable juror could find otherwise and dismissed the indictment without a written decision.

On appeal, the government argues that (1) the district court erred as a matter of procedure when it considered Vinton's motion to dismiss and weighed the sufficiency of the evidence before trial, and (2) the district court erred as a matter of substance when it concluded that no reasonable juror could find that Vinton attempted to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity.

**II**

A. *Procedural Error*

The government argues that it was procedural error for the district court to consider Vinton's motion and to weigh the sufficiency of the evidence before a criminal trial. It argues that it didn't agree to proceed on stipulated facts, that it has additional evidence to present at trial, and that intent is a factual issue to be decided by the jury. Vinton argues that by not clearly objecting, the government did agree to proceed on stipulated facts, that the material evidence was presented to the district court, and that when the evidence is undisputed, intent can be a question of law. Because we find that the district court erred substantively when it dismissed the indictment, our assessment of the procedural issue wouldn't affect the outcome of this case. *See infra* Part B. Whether or not the district court erred procedurally, our finding on the government's substantive claim requires us to reverse the district court and remand for trial. Therefore, we decline to reach this issue.

B. *Substantive Error*

To convict a defendant under § 2422(b), the government must show that the defendant (1) "use[d] the mail or any facility or means of interstate or foreign commerce"; (2) to "knowingly persuade[], induce[], entice[], or coerce[]" or "attempt[] to" persuade, induce, entice or coerce; (3) a person who the defendant believed to be under the age of eighteen; (4) "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b); s*ee United States v. Roman*, 795 F.3d 511, 515 (6th Cir. 2015); *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir. 2010). Vinton doesn't challenge the evidence under the first and third elements that he used the internet, a facility of interstate commerce, to discuss having sex with a girl he believed to be under the age of eighteen.

Nor does he deny that if the sexual activity had occurred, he could have been charged with a criminal offense. Vinton contests only element two, the persuasion element; he contends that the undisputed evidence cannot show that he persuaded or attempted to persuade a minor to have sex with him.

Because there was no real minor in this case, Vinton was charged with *attempting* to persuade a minor. To prove attempt, the government must show the following two elements: (1) the defendant intended to persuade or entice a minor to participate in unlawful sexual conduct; and (2) the defendant took a substantial step toward persuading or enticing a minor. *Roman,* 795 F.3d at 517. This Court has described both communicating with an adult intermediary and traveling to meet the minor as substantial steps under § 2422(b), if paired with the requisite intent to persuade or entice a minor. *Id.* (noting that "engaging in communications with an adult intermediary who can exert influence to help achieve the child's assent" is an example of a substantial step); *United States v. Harmon*, 593 F. App'x 455, 465 (6th Cir. 2014) (finding "Harmon's arrival at the motel" to be "a substantial step that went beyond 'mere preparation'" that "satisfie[d] the requirement for an attempt under 18 U.S.C. § 2422(b)"). Because Vinton took both of these steps, the substantial step element collapses into the intent element in this case. If Vinton intended to persuade or entice the twelve-year-old girl when he messaged the FBI analyst and traveled to meet the analyst and her daughter, then Vinton took a substantial step toward enticing a minor.

### 1. Preliminary Legal Argument

On appeal, Vinton raises a preliminary legal argument as part of his larger argument that the evidence is insufficient to show that he attempted to entice a minor.[5] We review legal arguments de novo. *United States v. Ali*, 557 F.3d 715, 720 (6th Cir. 2009); *United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008).

---

[5]Arguably, Vinton raised this argument in his motion to dismiss as well, albeit inartfully. It is unclear what the district court made of this argument, because it never directly addressed it at the hearing on the motion to dismiss, and it dismissed the indictment without a written opinion. Nevertheless, we need to decide what conduct § 2422(b) criminalizes in order to determine whether a reasonable juror could find that it reaches Vinton's conduct in this case.

Vinton contends that for a defendant to be convicted under § 2422(b), the defendant must send "persuasive communication directed at the minor." This might sound like Vinton is arguing that a defendant must message a minor directly, but that's not quite right. In *United States v. Roman*, this Court held that a defendant need not communicate directly with a minor to violate § 2422(b); a defendant who works through an adult intermediary to persuade or entice a child still violates the statute. 795 F.3d at 516. Vinton recognizes that holding, but Vinton reads *Roman* to require that the defendant work through the adult intermediary in a specific way: he must use the adult intermediary as a messenger to convey the defendant's own enticing messages to the minor. In other words, the specific means of inducing or enticing the child must come from the defendant himself.

We disagree. First, Vinton's reading of *Roman* is strained. In *Roman* the defendant communicated only with a law enforcement officer posing as the father of a minor girl. *Id.* at 515. The defendant did say he would "spoil" the girl by performing sexual acts that she would enjoy, buying her gifts, and taking her shopping. *Id.* at 514. But he never asked the father to pass on these messages. And the court never found that he implied such a request or that he intended that the father pass on these messages. *See id.* at 514, 517–18. Therefore, it is a stretch to read *Roman* to require that the defendant send persuasive messages directly to or directed at the minor.

Further, accepting Vinton's argument would have illogical results. If we adopted Vinton's interpretation of *Roman*, it would mean that § 2422(b) would reach the defendant who promises to bring cake for the child but not the defendant who promises an adult intermediary $10,000 if the intermediary convinces the child to have sex with him. Both defendants intend to persuade or entice the minor. Both defendants work through an adult intermediary. But only the first defendant sends a persuasive message arguably directed at the child. The second defendant relies on the expertise of the parent in determining how best to entice the child. We don't think Congress, or the *Roman* court, meant to make this distinction and exempt defendants like the second one from conviction under § 2422(b).

By rejecting Vinton's legal argument, we also align our interpretation of § 2422(b) with the interpretations of several of our sister circuits. For example, in *United States v. Caudill*, a

defendant raised the same argument that a defendant can be convicted under § 2422(b) only if he "directs 'some of his intended inducements to the [child].'" 709 F.3d 444, 446 (5th Cir. 2013) (alteration in original) (quoting *United States v. Olvera*, 687 F.3d 645, 647–48 (5th Cir. 2012)). The Fifth Circuit rejected this argument, holding that a defendant need not "seek to have any of his communications with the adult passed on directly to a child." *Id.* Other circuits have also affirmed convictions under similar circumstances, where the defendant never sent messages directed at the minor. *Id.* at 446–47 (collecting cases).

"The gravamen of the attempt offense under § 2422(b) is the intention to achieve the minor's assent." *Roman*, 795 F.3d at 513. Whether the defendant aims to achieve a minor's assent by contacting the minor directly, by sending the minor enticing messages through an adult intermediary, or by enlisting an adult intermediary to persuade the minor, the defendant has the same intent to gain the minor's assent. And that intent is criminalized under § 2422(b).

### 2. Substantive Error in Dismissing the Indictment

Although the district court dismissed the indictment on sufficiency-of-the-evidence grounds, because it concluded that no reasonable juror could find that Vinton intended to persuade or entice a minor, the issue on appeal is whether the government could prove its case as a matter of law, thus requiring the district court to deny Vinton's motion to dismiss the indictment.[6] *See Roman*, 795 F.3d at 515. We review such decisions de novo. *Id*.

When we view the facts in the light most favorable to the government, we conclude that the government could prove that Vinton intended to persuade or entice the twelve-year-old minor. Specifically, a juror could reasonably conclude that Vinton chatted with the analyst with the aim of using the mother's influence on her child to persuade the minor to have sex with him.

---

[6]By framing the issue this way, we do not mean to fully equate Vinton's argument to legal arguments like those raised in *United States v. Roman*, 795 F.3d 511, or *United States v. Jones*, 542 F.2d 661 (6th Cir. 1976). In those cases, the defendants raised legal questions that are appropriate in a motion to dismiss an indictment. *Roman*, 795 F.3d at 515 ("Roman's argument requires us to interpret the meaning of § 2422(b)."); *Jones*, 542 F.2d at 665 (6th Cir. 1976) ("The District Court was justified in deciding Appellee's motion to dismiss the indictment before trial, because it raised the legal question of whether 18 U.S.C. § 2511(1)(a) was intended to apply to interspousal wiretaps."). Vinton's argument that the government cannot prove his intent based on this record is a different kind of argument that may not be appropriate in a pretrial motion to dismiss an indictment. We are not deciding the procedural issue here, because it wouldn't affect the outcome of this case. *See supra* Part II.A.

A reasonable juror could find that Vinton responded to the analyst's post because he wanted to find minors for sex. Vinton was the one who sent the first private message, responding to a post that referenced a series of child pornography. Vinton was also the first one to mention the possibility of sex with the child. Vinton points out that he only mentioned it as part of a question; he was asking what the analyst was interested in, not saying what he was interested in. That's true. But the fact that he could deduce what the analyst was interested in without being told suggests that he knew what the post was advertising from the start. And if he knew what the post was advertising when he responded to it, then his responding suggests that he was seeking out minors for sex. Then there's the fact that when the analyst confirmed that she was interested in someone having sex with her and her daughter, Vinton said that he "would love to try something like that." When the analyst specified that her daughter was twelve years old, he maintained that he "want[ed] to do . . . both [the analyst and her daughter.]" A reasonable juror could infer that Vinton was specifically seeking minors for sex when he logged into Whisper and responded to the analyst's post.

A reasonable juror could also find that Vinton continued the conversation with the aim of getting the minor's assent to have sex with him. Vinton asked explicitly about what specific sexual acts the girl could and would perform. He requested that the pair exchange photos of Vinton, the analyst, and the minor. And when he sent a picture of male genitalia, he asked if the analyst and the minor would like it. When the police searched Vinton's car, they found $1,400 in cash. It's hard to imagine why Vinton would need the money for consensual sex with an adult. Thus, it seems like Vinton may have planned to pay the minor for sex or pay the purported mother for helping to convince the minor. Either way, it suggests that Vinton intended to persuade or entice the minor.

A reasonable juror could also conclude that Vinton specifically intended to use the analyst's influence, as a parent, to lead the minor to have sex with him. Vinton believed from the beginning of the conversation that the analyst was the mother to the fictitious twelve-year-old. Vinton is likely aware of the special influence of parents over their children, and a reasonable juror could infer that he intended to exploit that influence. In several instances, he specifically relied on the mother's help. He suggested that the analyst could help him be gentle

with the girl and help him make sure the girl enjoyed the sexual encounter. Near the end of their conversation, he told the analyst that both she and her daughter would "have to be naked" when he arrived. A reasonable juror could view these as two specific instances in which Vinton sought the mother's help in persuading the girl to have sex with him. The mother would prepare the minor for Vinton by instructing her to get undressed before Vinton arrived, and the mother would make the girl feel comfortable during the sexual encounter to help coax her into having sex with Vinton. A reasonable juror could also view Vinton's promises to be gentle as examples of "agree[ing] with any parameters [the mother] set" as part of his effort to enlist the mother's help. *Roman*, 795 F.3d at 517–18.

The district court found that Vinton was interested primarily in sex with the adult FBI analyst and that he only passively acquiesced in her request that the minor join them. We don't think that this means that the government could not prove that Vinton intended to persuade the minor. First, the fact that Vinton was interested in consensual sex with an adult doesn't necessarily mean that he didn't also intend to persuade the minor. After all, the conversation began with Vinton responding to a post that referenced a series of child pornography. One of his first messages said that he was interested in "incest and younger women." And throughout the conversation, Vinton repeatedly affirmed his interest in both the adult analyst and the minor; he asked for pictures of both of them, he asked what they both would think of his genitalia, and he said baldly "I do want to f*** both of you." Then there's the $1,400 that the police found in Vinton's car. If Vinton wanted to persuade a minor badly enough that he was willing to spend $1,400, then he was far from passive. It is possible that Vinton wanted to have sex with both the analyst and the twelve-year-old daughter and that he intended to persuade or entice the minor in order to get what he wanted.

In sum, based on the undisputed evidence before the district court, the government could prove its case, specifically that Vinton intended to persuade or entice the minor through her purported parent. Thus, the district court erred in dismissing the indictment.

## III

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** Vinton's case for trial.