**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1696
_____

UNITED STATES OF AMERICA

v.

ALEXANDER DAVIS,
                                        Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 5-18-cr-00105-001)
District Judge: Honorable Edward G. Smith
_____

Argued on June 17, 2020

Before: JORDAN, MATEY and ROTH, Circuit Judges

(Opinion filed: January 12, 2021)

Robert Epstein                    [ARGUED]
Federal Community Defender Office for the
Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
          *Counsel for Appellant*


Josh A. Davison
Emily McKillip                    [ARGUED]
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
          *Counsel for Appellee*

_____

OPINION

_____

ROTH, <u>Circuit Judge</u>

Alexander Davis appeals his convictions for attempting to entice a minor to engage in sexual conduct and for traveling with intent to engage in illicit sexual conduct. Davis challenges the sufficiency of the evidence, argues that the prosecutor made prejudicial statements that misrepresented the law and deprived him of due process, claims that he was entrapped as a matter of law, and disputes the application of a sentencing enhancement. For the reasons that follow, we will affirm his judgments of conviction and sentence.

# I. Background

## A. Factual Background

Davis answered an ad in the "w4m" section of Craigslist.com, where women look for casual sex with men. The ad was entitled "Wild child," and unbeknownst to Davis, was posted by Officer Daniel Block, who was conducting a sting operation to catch adults trying to have sex with minors. The ad stated that the poster was an eighteen-year-old woman and requested that interested men respond "if you are looking for fun."[1]   Davis responded, representing that "she" was twenty-five years old and "love[s] to indulge in adult fun."[2] Block replied that he was a fourteen year old.  To this, Davis responded, "That's ok   I know how to be respectful   do you wanna meet today?"[3]  Block then continued conversing with Davis through text messages while pretending that he was an eighth-grade girl named "Marisa."

Davis and Marisa exchanged text messages over an eight-day period.  Their text exchanges demonstrate Davis's attempts to avoid incriminating himself.  He showed repeated reluctance to engage in lewd conversation, expressed fear of getting caught, stated that that he did not want to have sex with Marisa because he is gay, and even asked her if she was

---

[1] JA1026.

[2] JA1027.  Davis also claimed that he was nineteen during their conversation.  He was actually thirty years old at the time, a fact he revealed later.

[3] JA1029.

"affiliated with any type of law enforcement."[4]  However, his responses were also permeated with innuendo and marked by attempts to sexually groom the fictitious minor.  He brought up topics like her virginity,[5] plied her with compliments, asked when she was not being supervised, repeatedly attempted to get her to meet him, and offered her gifts including an iPad, an iPhone, payment of her phone bill, and a new bathing suit.  They eventually agreed that she would skip school and meet him at a McDonalds near her house in Pennsylvania.  They would spend the day together at the water park in Kalahari Resorts.  With their plan in place, the conversation turned explicitly sexual and Marisa expressed concern about getting pregnant.  Davis assured her that he would bring "protection" and personal lubricant.

On the morning of the planned meeting, Davis traveled from New York to the McDonalds parking lot where he was arrested by Officer Block.  Davis had three condoms in his pocket.  During questioning, Davis confessed to knowing Marisa was fourteen, that they planned to meet that day, and that he had brought condoms pursuant to their plan.  According to Davis, he only made these statements after Block misled him to believe that Marisa was real and that her mother had found their text exchanges and reported this to the police.  During a cigarette break, Davis volunteered to officers that he became attracted to young girls when he and his family went to the Kalahari water park and he saw young girls in their swimsuits.  Davis denies making this statement.  On the ride to jail, Davis voluntarily told Block that he liked 14-year-old girls because he believed prostitutes were unclean.  Davis denies he ever

---

[4] JA935-36.
[5] JA904.

4

made this statement and claims that it was Block who made a similarly obscene statement.

## B. Procedural History

Davis was charged with one count of use of an interstate facility to attempt to knowingly persuade, induce, entice and coerce a minor to engage in sexual activity, 18 U.S.C. § 2422(b), and one count of travel in interstate commerce with intent to engage in illicit sexual conduct with a minor, 18 U.S.C. § 2423(b). At trial, Davis argued that he did not knowingly entice a minor because throughout their conversation he believed "Marisa" was an adult who was role-playing as a fourteen-year-old. He also argued that he was entrapped to commit the crime; the court instructed the jury on an entrapment defense. The jury found Davis guilty on both counts. At sentencing, the court applied a two-point sentencing enhancement for Davis's misrepresentation of his age and of his sexual orientation. He was sentenced to 127 months imprisonment and five years of supervised release and was required to register as a sex offender.

Davis appeals, arguing (1) there is insufficient evidence to uphold both counts of his conviction, (2) the prosecutor made prejudicial statements that misrepresented the law and deprived him of due process, (3) he was entrapped as a matter of law, and (4) his actions did not warrant a sentencing enhancement.

5

## II. Discussion

### A. Jurisdiction

The District Court had jurisdiction over prosecutions for violations of federal law pursuant to 18 U.S.C. § 3231. We have jurisdiction over an appeal from a final decision of a district court pursuant to 28 U.S.C. § 1291 and an appeal from a criminal sentence pursuant to 18 U.S.C. § 3742(a).

### B. Sufficiency of Evidence

Davis challenges the sufficiency of the evidence for both counts of his conviction. Appellate courts apply "a deferential standard in determining whether a jury's verdict rests on sufficient evidence," view the evidence in the light most favorable to the government, and will uphold the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6]

### 1. Attempted Enticement of a Minor

Davis first challenges his conviction for attempted enticement of a minor pursuant to 18 U.S.C. § 2422(b). That statute criminalizes the use of

> the mail or any facility or means of interstate or foreign commerce . . . [to] knowingly persuade[], induce[], entice[], or coerce[] any

---

[6] *United States v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008) (emphasis omitted).

individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so . . ..

Because Davis was caught in a sting operation that did not involve an actual minor, the charge against him was brought under the attempt provision of § 2422(b).[7]  A conviction for attempt under this statute "requires evidence that a defendant (1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believes them to be, constitutes a substantial step in the commission of the crime."[8]  Davis's challenge implicates both elements. Davis claims that the government is required to present objective evidence that unequivocally corroborates a defendant's intent to commit the substantive offense. According to Davis, the government's evidence failed to unequivocally corroborate that he believed he was communicating with a minor.  We disagree with his proposed standard and with his conclusion.

Unequivocal evidence is not the only way that the government can prove criminal intent in attempt offenses.  In *United States v. Cruz-Jiminez*, we explained

---

[7] *See United States v. Tykarsky*, 446 F.3d 458, 468-69 (3d Cir. 2006); *United States v. Pawlowski*, 682 F.3d 205, 211 (3d Cir. 2012).

[8] *Tykarsky*, 446 F.3d at 469.

7

if substantial steps are the only proof of the defendant's criminal intent, then those steps must unequivocally evidence such an intent; that is, it must be clear that there was a criminal design and that the intent was *not* to commit some non-criminal act. *If, however, there is evidence of criminal intent independent of that demonstrated by the defendant's substantial steps in furtherance of his criminal design, the substantial steps do not themselves need to be unequivocally indicative of criminal intent—they must merely corroborate criminal intent. . . .* [S]ubstantial steps in furtherance of the criminal act can serve to corroborate criminal intent or, in some instances, can themselves supply unequivocal evidence of the requisite intent.[9]

As we noted then, our inquiry is consistent with the Model Penal Code.[10] Importantly, we clarified in *Cruz-Jiminez* "that the element of intent is not wholly incorporated into the

---

[9] 977 F.2d 95, 102, n.11 (3d Cir. 1992) (emphasis added) (internal citations and quotation marks omitted); *accord United States v. Hite*, 769 F.3d 1154, 1164 (D.C. Cir. 2014).

[10] *Cruz-Jiminez*, 977 F.2d at 102 (citing Model Penal Code § 5.01).

'substantial step' that is also essential to the crime of attempt."[11]    Both elements of attempt must be satisfied. Although sometimes a substantial step may supply unequivocal evidence of criminal intent, it need not always do so.   If the government presents evidence of criminal intent independent of a defendant's substantial step, then the substantial step need only corroborate criminal intent.[12]

Davis's post-arrest confession to knowing Marisa's age and their text communications are each evidence of criminal intent independent of that demonstrated by his substantial steps,[13] and as discussed below, his travel to the prearranged meeting place and possession of condoms are substantial steps that corroborate his criminal intent.[14] Davis's argument that he believed Marisa was a role-playing adult was rejected by the jury and belied by his post-arrest statements to police, his texts

---

[11] *Id.* at 102 n.11.

[12]   Although *Cruz-Jiminez* involved an attempted drug transaction and not the attempted enticement of a minor, 977 F.2d at 97, its discussion of criminal attempt is equally applicable here.  We applied this standard in the context of an enticement conviction in *Tykarsky*, even if we did not expressly state the full rule.  *See* 446 F.3d at 469.

[13] *See Tykarsky*, 446 F.3d at 469 ("The instant messages and the statements that [the defendant] made to FBI agents upon his arrest establish [the defendant]'s subjective intent . . . ."); *Cruz-Jiminez*, 977 F.2d at 102 n.11 ("[A] defendant's confession could furnish evidence of criminal intent independent from that demonstrated by any substantial steps taken in furtherance of the crime.").

[14] *See Tykarsky*, 446 F.3d at 469.

expressing concerns about getting caught by law enforcement, and his grooming tactics tailored for a minor.[15]

Davis asks us to consider the context in which he was interviewed by police and to believe that Officer Block's misleading statements and threatening manner prompted him to falsely confess to knowing Marisa's age. We disagree. The jury was aware of Davis's version of his post-arrest statements and the context surrounding them through his own testimony. The jury's verdict demonstrates that they either did not believe him or did not give his version of the facts much weight. Our deferential standard of review obliges us to uphold the jury's verdict.

## 2. Interstate Travel for Purpose of Illicit Sexual Conduct

Davis relies on the same theory—that he believed he was traveling across state lines to meet an adult and not a minor—to argue that there was insufficient evidence to establish his criminal intent in violation of 18 U.S.C. § 2423(b). Section 2423(b) criminalizes "travel[] in interstate commerce . . . with a motivating purpose of engaging in any illicit sexual conduct with another person." The government introduced evidence that Davis traveled from New York to Pennsylvania on the morning of his planned meeting with Marisa. As discussed above, there was ample evidence from

---

[15] This Court and other courts of appeals have upheld convictions where the factfinders reject similar defenses concerning knowledge of the would-be-victim's age. *See, e.g.*, *Pawlowski*, 682 F.3d at 211; *United States v. Berk*, 652 F.3d 132, 140 n.8 (1st Cir. 2011) (on plain error review).

which the jury could conclude that Davis believed he was meeting a minor and that the meeting would culminate in sex.

## C. Prosecutor's Statements

Next, Davis claims that he was prejudiced by the prosecutor's alleged misstatement of law during closing arguments. The prosecutor told the jury that the substantial step element of Davis's § 2422(b) charge was satisfied by his travel to meet Marisa and by his possession of condoms. Davis objected, contending that a substantial step towards violating § 2422(b) must occur through the communications themselves. Consistent with his theory at trial, Davis argues on appeal that, "as a matter of law and logic," post-enticement acts like travel and the possession of condoms can never be a substantial step for enticement of a minor. We review questions of law de novo,[16] and prejudicial statements made by a prosecutor at closing for harmless error.[17]

First, Davis contends that, as a matter of law, a substantial step must be necessary to the consummation of the crime, citing *United States v. Bailey*.[18] Because travel and possession of condoms are not necessary to violate § 2422(b), he asserts that neither of these acts can constitute a substantial step towards that offense. Second, Davis argues that, as a matter of logic, post-enticement acts cannot constitute a substantial step because they occur after the alleged enticement. To support this argument, Davis relies on *United*

---

[16] *United States v. Mitchell*, 690 F.3d 137, 148 (3d Cir. 2012).
[17] *United States v. Gambone*, 314 F.3d 163, 177 (3d Cir. 2003).
[18] 228 F.3d 637, 640 (6th Cir. 2000).

*States v. Nitschke*,[19] a district court opinion from the District of Columbia Circuit that supports his contention that post-enticement acts can never serve as a substantial step.

We do not agree with his interpretation of the law of attempt. Davis misapprehends the relationship of a substantial step to a criminal offense. The central purpose of the substantial step inquiry is to corroborate criminal intent[20] and to establish that a defendant went beyond mere planning.[21] The substantial step does not need to be the exact conduct that the statute criminalizes. It would be absurd to require the substantial step, a single element of attempt, to be identical to the consummated crime but for the fictitious minor.[22] However, "important to a substantial-step assessment is an understanding of the underlying conduct proscribed by the

---

[19] 843 F.Supp. 2d 4, 16 (D.D.C. 2011)

[20] *Cruz-Jiminez*, 977 F.2d at 102; *Martinez v. Att'y Gen.*, 906 F.3d 281, 284 (3d Cir. 2018); MPC 5.01(2); *cf. United States v. Howard*, 766 F.3d 414, 419-20 (5th Cir. 2014) ("This requirement 'prevents the conviction of persons engaged in innocent acts on the basis of a mens rea proved through speculative inferences, unreliable forms of testimony, and past criminal conduct.'") (quoting *United States v. Oviedo*, 525 F.2d 881, 884-85 (5th Cir. 1976)).

[21] *Martinez*, 906 F.3d at 285; *United States v. Hayward*, 359 F.3d 631, 644 (3d Cir. 2004) (Fuentes, J., dissenting in part) ("A 'substantial step' has been defined as something more than mere preparation and less than the last act necessary before commission.").

[22] *Cf. Cruz-Jiminez*, 977 F.2d at 102 n.11 (distinguishing the element of intent from the substantial step inquiry).

crime being attempted."[23]  The substantial step must, in some way, relate to the conduct criminalized by the statute.[24]  Here, that conduct requires the use of interstate facilities to entice a minor to engage in sexual conduct.[25]

A post-enticement act like travel can constitute a substantial step in violating § 2422(b).  To do so, however, the travel must relate to the defendant's enticing communications.[26]  This reasoning is implicit in most decisions involving travel because, generally speaking, the travel relates

---

[23] *United States v. Farhane*, 634 F.3d 127, 148 (2d Cir. 2011).
[24] *See United States v. Dworken*, 855 F.2d 12, 19-20 (1st Cir. 1988) ("[I]n order to constitute a substantial step leading to attempt liability, an actor's behavior must be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance *with a design to violate the statute*.") (emphasis added) (internal quotation marks omitted).
[25] 18 U.S.C. § 2422(b).
[26] We in no way mean to suggest that post-enticement acts are the only way of proving a substantial step.  Davis's communications could be reasonably interpreted as a substantial step to entice a minor, *see United States v. Nestor*, 574 F.3d 159, 161 (3d Cir. 2009), specifically his offer of gifts to Marisa.

13

to a plan established by the interstate communication.[27]  In these circumstances, traveling to an agreed upon location may demonstrate that a defendant's communications were not innocent but harbored criminal intent and that the defendant was willing to go beyond mere planning.  In other words, traveling demonstrates that the communications were not "all hot air."[28]

Every other court of appeals that has addressed this issue has held that travel can constitute a substantial step.[29] This determination is consistent with our decision in

---

[27] *See, e.g., United States v. Young*, 613 F.3d 735, 743 (8th Cir. 2010) (finding defendant's attempt to reserve motel room and his travel to the motel and a park, all in accordance to plans made over communications with minor, each constituted substantial steps); *United States v. Brand*, 467 F.3d 179, 204 (2d Cir. 2006) ("Brand took a 'substantial step' . . . because Brand actually went to . . . the meeting place that he had established with [the minor].").

[28] *See United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008).

[29] *Brand*, 467 F.3d at 204; *Howard*, 766 F.3d at 420-21; *United States v. Vinton*, 946 F.3d 847, 852 (6th Cir. 2020); *Gladish*, 536 F.3d at 648-49; *Young*, 613 F.3d at 743; *United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir. 2007); *United States v. Faust*, 795 F.3d 1243, 1250 (10th Cir. 2015); *United States v. Gillis*, 938 F.3d 1181, 1190 (11th Cir. 2019); *cf. Berk*, 652 F.3d at 140-41 (proposing rendezvous is a substantial step); *United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012) (same); *United States v. Clarke*, 842 F.3d 288, 298 (4th Cir. 2016) (bringing candy to meetup location is substantial step).

*Tykarsky*.[30] Although in that case we identified the defendant's instant messages as a substantial step, we also indicated that his travel to "the Holiday Inn according to the plan established over the instant messages provide[d] the requisite 'measure of objective evidence' corroborating his intent."[31] That is the precise purpose of the substantial step inquiry.[32]

Requiring the substantial step to relate to the enticing communications prevents criminalizing otherwise lawful behavior and permitting improper inferences against a criminal defendant. In *United States v. Roman*, the Sixth Circuit Court of Appeals held that a substantial step was taken by the defendant when he brought a flower and a candy bar to a meetup location after the defendant was told to bring those items to "break the ice" with the child.[33] The court there tethered its substantial step inquiry to the criminalized conduct.

Here, Davis's travel to the McDonald's parking lot constitutes a substantial step. He and Marisa made plans over text message to meet that day and have sex. His travel relates directly to their conversation, corroborates his criminal intent, and establishes that his communications were not merely hot air.

---

[30] 446 F.3d at 469.

[31] *Id.* at 469 (quoting *United States v. Everett*, 700 F.2d 900, 908 (3d Cir. 1983)).

[32] *See id.; see also Goetzke*, 494 F.3d at 1237 (interpreting *Tykarsky* to have concluded "that instant messages arranging a meeting and appearing at the prearranged meeting place each provided sufficient evidence of a substantial step").

[33] 795 F.3d 511, 514, 518 (6th Cir. 2015).

Davis's possession of condoms also constitutes a substantial step. The government often uses a defendant's possession of condoms to establish a substantial step in § 2422(b) prosecutions.[34] However, juries must not be invited to infer criminal intent by the mere possession of a widely available prophylactic. Only when it relates to the offending communications can the possession of condoms be said to corroborate a defendant's criminal intent to violate § 2422(b). To find otherwise would divorce the substantial step inquiry from the offensive conduct and sanction the potential for improper inferences against a defendant. We have no such concerns about the prosecutor's theory of culpability here. Davis assured Marisa over text message that she would not get pregnant because he would bring protection. His possession of condoms at the meetup location was consistent with their plan and corroborates his criminal intent. It was entirely appropriate for the prosecutor to argue that his travel and possession of condoms were substantial steps in violation of § 2422(b).

## D. Entrapment

Davis asserts that he was entrapped as a matter of law into violating § 2422(b). He relies on his lack of a criminal

---

[34] *Compare Brand*, 467 F.3d at 204 (condoms discussed over communications); *Faust*, 795 F.3d at 1250 (same), *with United States v. Gagliardi*, 506 F.3d 140, 144, 150-51 (2d Cir. 2007) (condoms not tied to communications); *United States v. Strubberg*, 929 F.3d 969, 975 (8th Cir. 2019) (same); *United States v. Myers*, 575 F.3d 801, 809 (8th Cir. 2009) (same); *United States v. Murrell*, 368 F.3d 1283, 1288 (9th Cir. 2004) (same).

history, his attempts to avoid explicit sexual conversation with Marisa, and Officer Block's tenacity in the sting operation. The District Court determined that there was sufficient evidence to submit the entrapment defense to the jury. When a jury has rejected an entrapment defense, as it did here, we "must view the evidence in the light most favorable to the prosecution, and resolve all reasonable inferences therefrom in its favor . . . [and] must uphold the jury's verdict unless no reasonable jury could conclude beyond a reasonable doubt that the defendant was predisposed to commit the offense for which he was convicted."[35]

"Entrapment occurs when a defendant who was not predisposed to commit the crime does so as a result of the government's inducement."[36] We have loosely defined predisposition "as the defendant's inclination to engage in the crime for which he was charged, measured before his initial exposure to government agents."[37] The affirmative defense of entrapment has two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal conduct.[38] If a defendant makes a prima facie showing of both elements, the burden shifts to the government to disprove the entire defense by disproving one of the elements of the defense beyond a

---

[35] *United States v. Lakhani*, 480 F.3d 171, 179 (3d Cir. 2007) (quoting *United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982)).

[36] *Jannotti*, 673 F.2d at 597.

[37] *United States v. Fedroff*, 874 F.2d 178, 182 (3d Cir. 1989) (internal citation and footnote omitted).

[38] *United States v. Dennis*, 826 F.3d 683, 690 (3d Cir. 2016).

17

reasonable doubt.[39]  The government may prove predisposition by showing "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement."[40]

The government's evidence best fits into the third method of showing Davis's predisposition, a willingness to commit the crime.  Davis's post-arrest statements regarding his attraction to young girls is evidence that he was willing to entice a minor.  When Davis discovered he was corresponding with a fourteen-year-old who posted a personals ad for sex, his "ready response" acknowledged her age and asked if she wanted to meet that day.  Based on this evidence, a reasonable jury could conclude beyond a reasonable doubt that Davis was predisposed to entice a minor.

Davis's reluctance to engage in sexually explicit conversation is not necessarily evidence of his non-predisposition to violate § 2422(b).  Rather, it may be evidence of a misguided attempt to avoid incriminating himself.  Section 2422(b) does not criminalize sexually explicit

---

[39] *United States v. El-Gawli*, 837 F.2d 142, 145, 147 (3d Cir. 1988).  It is not clear from the record how Davis satisfied his burden of production to show government inducement.  However, the government did not object to the instruction at the time and does not challenge Davis's prima facie defense now.

[40] *Lakhani*, 480 F.3d at 179 (quoting *United States v. Gambino*, 788 F.2d 938, 945 (3d Cir. 1986)).

18

communications.[41]  It criminalizes communications designed to "persuade[], induce[], entice[], or coerce[]" a minor "to engage in . . . sexual activity."[42]  In other words, it "criminalizes an intentional attempt to achieve a mental state— a minor's assent" to engage in sexual conduct.[43]  Davis's text messages are replete with attempts to entice Marisa to meet him.  Although he claims that his plan to meet her was innocent, his argument is refuted by the evidence.  He confessed that he used Craigslist to have sex.  He expressed fear of getting caught by law enforcement.  He groomed Marisa by showering her with compliments, promising her gifts, and bringing up sexual topics like her virginity, all while insinuating that his ultimate goal was to engage in sexual activity with her.  Accordingly, we hold that he was not entrapped as a matter of law.

## E. Sentencing Enhancement

Davis argues that the District Court erred by applying a sentencing enhancement for (1) misrepresenting his age and (2) misrepresenting his sexual orientation, in an effort to influence a minor to engage in sexual conduct.  Because Davis made no objection to his sentencing enhancement, we review his sentence for plain error.[44]  "To demonstrate 'plain error' an appellant bears the burden of proving that (1) the court erred (2) the error was 'plain' at the time of appellate consideration and (3) the error affected substantial rights, usually meaning

---

[41] *Tykarsky*, 446 F.3d at 482.

[42] 18 U.S.C. § 2422(b).

[43] *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir. 2007) (emphasis omitted).

[44] *See United States v. Glass*, 904 F.3d 319, 321 (3d Cir. 2018).

that the error 'must have affected the outcome of the district court proceedings.'"[45]  An error is "plain" if it is clear or obvious.[46]  A person's substantial rights are affected if there is a reasonable probability that the District Court would have imposed a lower sentence absent the error.[47]  We hold that the District Court did not plainly err by applying the enhancement.

U.S.S.G. § 2G1.3(b)(2) provides for a two-level sentencing enhancement "[i]f (A) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in prohibited sexual conduct; or (B) a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct."  Davis's misrepresentations of his age and sexual orientation best fit under § 2G1.3(b)(2)(A), which prohibits "misrepresentation of a participant's identity," including a defendant's "name, age, occupation, gender, or status."[48]

First, Davis argues that the Guidelines do not permit an enhancement for convictions involving sting operations. However, he cites a Guideline Application Note that precludes enhancements for convictions arising from sting operations

---

[45] *Id.* (quoting *United States v. Rosa*, 399 F.3d 283, 293 (3d Cir. 2005)).

[46] *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006).

[47] *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347-48 (2016).

[48] U.S.S.G. § 2G1.3, App. Note 3(A); *cf. Young*, 613 F.3d at 748-49 (misrepresenting identity for, inter alia, lying about marriage and having children).

under § 2G1.3(b)(2)(B).[49]  The relevant provision, § 2G1.3(b)(2)(A), does not prohibit applying the enhancement to convictions arising from sting operations.

Next, Davis argues that the enhancement should not apply because he corrected the misrepresentation of his age before his conversation with Marisa turned sexual. However, Davis's conversation was steeped in sexual innuendo from the start. Davis's later revelation of his real age does not undo his initial misrepresentation, which can be reasonably understood as an effort to make Marisa feel more comfortable as their correspondence began and ultimately entice her to have sex.

Last, Davis contends that he did not misrepresent his sexual orientation to entice Marisa and instead was attempting to end communications with her. The government contends he did this to assure Marisa he was not a sexual threat in his continued effort to meet her. Because the government's theory is reasonable, any error was not plain. Even if the court did err, it did not affect Davis's substantial rights because the two-point enhancement would still apply as a result of his misrepresentation about his age.

### III. Conclusion

For the foregoing reasons, we will affirm Davis's judgments of conviction and sentence.

---

[49] U.S.S.G. § 2G1.3, App. Note 3(B) ("[S]ubsection (b)(2)(B) does not apply in a case in which the only 'minor' . . . is an undercover law enforcement officer.").