**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-2109 & 24-2111

_____

UNITED STATES OF AMERICA

v.

DANIEL RAY LANE,
     Appellant in No. 24-2109

UNITED STATES OF AMERICA

v.

ZHENYU WANG, a/k/a Bill Wang,
     Appellant in No. 24-2111

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2:20-cr-00254-002 & 2:20-cr-00254-004)
District Judge: Hon. Harvey Bartle, III
_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 9, 2025

Before: HARDIMAN, KRAUSE, and FREEMAN, *Circuit Judges*

(Filed: November 19, 2025)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge*.

Appellants Zhenyu Wang and Daniel Ray Lane challenge their convictions for conspiring and attempting to engage in and engaging in transactions regarding sanctioned Iranian oil, in violation of 50 U.S.C. §§ 1701-1707 (the International Emergency Economic Powers Act (IEEPA)) and 18 U.S.C. § 371, and for money laundering conspiracy, in violation of 18 U.S.C. § 1956(h).  Because none of their arguments on appeal are persuasive, we will affirm the District Court's judgments.

## I.    DISCUSSION[1]

We consider Wang's claims before turning to Lane's.

### A.    Wang's Claims

Wang raises three primary arguments on appeal.  First, he contends that IEEPA is an unconstitutional delegation of authority by Congress to the President.  The District Court did not err in denying Wang's post-trial motion challenging the constitutionality of the statute.  We previously rejected a nondelegation challenge to IEEPA.  *See United*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the District Court's evidentiary rulings for abuse of discretion.  *United States v. Gonzalez*, 905 F.3d 165, 195 (3d Cir. 2018).  We review issues raised for the first time on appeal for plain error.  *Id.* at 205 n.17.  We review Wang's challenge to the constitutionality of IEEPA *de novo*, under *United States v. Rodia*, 194 F.3d 465, 469 (3d Cir. 1999).  *See also United States v. Bishop*, 66 F.3d 569, 572 n.1 (3d Cir. 1995).

2

*States v. Amirnazmi*, 645 F.3d 564, 576 (3d Cir. 2011).  And even if Wang is correct that the executive branch has broadened its use of IEEPA since *Amirnazmi*, that would not affect our prior conclusion that the statute satisfies the constitutional requirement of setting out an intelligible principle constraining delegated authority.  *See id.* at 575-77.

Wang's second argument, that the District Court abused its discretion in limiting expert testimony from Dr. Barber on the relationship between Wang's mental illness and *mens rea*, fares no better.  Evidence of mental illness can be introduced to negate *mens rea*, *United States v. Pohlot*, 827 F.2d 889, 897-98, 905-06 (3d Cir. 1987), but Dr. Barber's proposed testimony was simply that Wang's social anxiety and PTSD led him to pretend to have experience in illegal oil transactions and to participate in the criminal scheme in order not to lose "face" before his co-conspirators, Wang Br. 56-57.  That testimony, in other words, would not have shown Wang lacked the requisite intent to commit his offenses.

Third, Wang asserts that the District Court abused its discretion by excluding portions of Dr. Barber's testimony that amounted to recitations of Wang's own statements during his interview with Dr. Barber, who evaluated Wang before trial at his counsel's request.  The excluded statements—offered to show that Wang did not intend to violate the law, or was less blameworthy, because his mental illness led him to participate in the oil deal—were impermissible hearsay unless they fell within an exception in the Federal Rules of Evidence.  But the only exception Wang invoked is for statements made for and pertaining to medical treatment, Fed. R. Evid. 803(4), and the District Court reasonably concluded that Wang's statements to Dr. Barber, most of which

3

concerned his upbringing in China, were not made primarily for the purpose of medical diagnosis or treatment, but rather to help his criminal defense. Thus, Rule 803(4)'s hearsay exception is inapplicable. *Cf., e.g.*, *United States v. Gonzalez*, 905 F.3d 165, 199-201 (3d Cir. 2018) (holding that Rule 803(4) covered statements the victim made to a therapist she had long consulted for treatment, about her emotional state and symptoms); *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980) (holding that the victim's statements to a doctor were permissible hearsay because she made them for no "reason other than promoting treatment"); *see also id.* at 83-85.

Nor were Wang's statements admissible under Federal Rule of Evidence 703 as evidence on which his expert relied to form her opinion. The District Court implicitly concluded that the probative value of Wang's statements did not "substantially outweigh[] their prejudicial effect," Fed. R. Evid. 703, when it ruled that Dr. Barber could testify to her methods and conclusions but could not relay Wang's "self-serving" statements, Wang App. 2357. And that determination was not an abuse of discretion, as Rule 703 is not a "conduit" for the testifying expert to transmit hearsay to the jury "under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (quoting *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007)).

Fourth, Wang contends that the District Court abused its discretion in declining to give his proposed jury instruction on mistake of law. Wang would be entitled to his proposed instruction only if (1) it accurately stated the law; (2) the theory of defense was "supported by the evidence"; (3) it was not already part of the charge; and (4) the failure

4

to include an instruction on his theory "den[ied] him a fair trial." *United States v. Hoffecker*, 530 F.3d 137, 176 (3d Cir. 2008) (citation omitted). But here the second and third criteria are not satisfied: Wang's mistake-of-law instruction was not supported by the evidence, which showed he repeatedly demonstrated knowledge that transacting in sanctioned Iranian oil was illegal and his participation could have legal consequences, even if he lacked the means to carry out his role, and the instruction given by the District Court substantially covered Wang's requested instruction, in that it explained a mistake could negate *mens rea* if it meant a defendant did not act knowingly. *See United States v. Petersen*, 622 F.3d 196, 208-09 (3d Cir. 2010).

## B.     Lane's Claims

Lane's claims on appeal also do not withstand scrutiny. First, he argues that we should overturn the jury's rejection of his entrapment defense, which we will do only if no reasonable jury could have reached the jury's conclusion. *United States v. Davis*, 985 F.3d 298, 306-07 (3d Cir. 2021). That is not the case here: Lane failed to establish either element of entrapment—that the government induced him to commit his offenses and that he was not predisposed to join the oil deal. *Id*. at 307.

To prove inducement, Lane had to show that government officials did more than "afford opportunities or facilities for the commission of the offense," *United States v. Russell*, 411 U.S. 423, 435 (1973), and that they used coercive tactics such as intimidation or threats, *United States v. Marino*, 868 F.2d 549, 553-54 (3d Cir. 1989). But Lane was simply given the opportunity to commit the offenses—not even by a government official, but by one of his own employees, Nicholas Fuchs; the undercover

government operatives repeatedly assured Lane and his co-conspirators that they could back out of the deal at any time; and contrary to Lane's assertion, the amount of money he would receive for laundering the proceeds of the illegal sales was not inducement. *See United States v. Spentz*, 653 F.3d 815, 819 (9th Cir. 2011) (citing *Sherman v. United States*, 356 U.S. 369, 372 (1958)).

As to predisposition, a particularly significant factor "is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducement." *United States v. Fedroff*, 874 F.2d 178, 183 (3d Cir. 1989) (quoting *United States v. Reynoso-Uloa*, 548 F.2d 1329 (9th Cir. 1977)). Yet far from showing such reluctance, Lane repeatedly indicated his willingness to participate in the criminal scheme, despite being told multiple times that he could back out.[2]

Next, Lane takes issue with the District Court's decision to preclude Lane from questioning Fuchs about Samuel Gonzalez—a money launderer and drug dealer whom Fuchs contacted as part of the scheme—to undermine Fuchs's credibility and attribute knowledge of money laundering to Gonzalez, in lieu of Lane. Here, the District Court acted well within its "wide discretion in limiting cross-examination." *United States v. Casoni*, 950 F.2d 893, 918 (3d Cir. 1991). Cross-examination about Gonzalez would have produced evidence of limited probative value, given there was already ample

---

[2] Similarly, contrary to Lane's argument, it is not apparent how the District Court erred in excluding testimony on the legality of transacting in Russian oil, which would not have helped the jury decide whether Lane was predisposed to commit his actual offenses involving sanctioned *Iranian* oil.

6

impeachment evidence in the record, and asking Gonzalez about money laundering would not have shown that Lane was ignorant about it.

Finally, we reject Lane's argument, raised for the first time on appeal, that the District Court erred in its entrapment jury instruction, because it did not give jurors sufficient guidance on entrapment, and his proposed instruction would have led the jury to a "different verdict." Lane Br. 55.[3] The District Court did sufficiently define the elements of entrapment and the Government's burden in its jury instruction and in its response to the jury's request for clarification. And Lane does not show the instruction prejudiced him. *See Hoffecker*, 530 F.3d at 176. Indeed, many of the so-called facts he insists the jury would have considered had they heard the alternative instruction are unsupported assertions (for instance, that Lane was reluctant to join the scheme), or, even if true, would not have established entrapment (for example, that Lane was induced by the size of the expected profits).

## II.    CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.

---

[3] Given Lane raised this claim for the first time on appeal, we review it for plain error. Fed. R. Crim. P. 52(b); *United States v. Marcus*, 560 U.S. 258, 262 (2010).